### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

Civil Action No. 3:12-cv-01658-JCH

BRISTOL HEIGHTS ASSOCIATES, LLC;

*plaintiff;*

v.

CHICAGO TITLE INSURANCE COMPANY;

*defendant.*

**MEMORANDUM OF LAW
IN SUPPORT OF
MOTION FOR SANCTIONS**

February 5, 2013

The defendant, Chicago Title Insurance Company ("Chicago Title"), submits this memorandum in support of its Motion for Sanctions. That Motion seeks the remedies available under 28 USC § 1927 and Rule 11(c) of the Federal Rules of Civil Procedure against counsel for the plaintiff, Bristol Heights Associates, LLC ("Bristol Heights"), on the grounds that plaintiff's counsel, Stacie Zimmerman, Esq., has unreasonably and vexatiously multiplied the proceedings in this case and on the additional grounds that she has presented to this Court a two-count Complaint for an improper purpose and making claims on behalf of the plaintiff that are not warranted by existing law.

#### Procedural History of Dispute Between Parties

This is the fourth proceeding between the parties regarding the dispute arising from the same transaction and group of facts. That dispute concerns: (1) an owner's title insurance policy underwritten by Chicago Title for a parcel of real property in Bristol, Connecticut owned by Bristol Heights (the "Policy" and the "Property" respectively), (2) the tax liens filed against the Property by the City of Bristol, Connecticut, (3) the plaintiff's payment of the taxes secured by the liens, and (4) the plaintiff's claim for repayment under the Policy.

*Arbitration*: The first proceeding was an arbitration commenced by Bristol Heights wherein it made a claim against Chicago Title under the terms of the Policy. The trial court in *Chicago Title Ins. Co. v. Bristol Heights Assocs., LLC*, et al., Superior Court of Connecticut, Judicial District of Waterbury (Complex Litigation Docket), docket no. X02 UWY CV 07-402047 (the "State Court Action") found as fact that in the year prior to the commencement of the State Court Action, Bristol

Heights "initiated arbitration on the enforcement of the terms of the Policy . . . [but on] November 6, 2006, [it] withdrew from the arbitration proceedings which had been scheduled for a hearing on November 21, 2006." *See* Exhibit A, Memorandum of Decision ("State Court Judgment") (Shaban, J. Aug. 18, 2011) (2011 WL 4031565) at 13.

***State Court Action***:     The State Court Action was the second proceeding between the parties. In that action, Chicago Title brought suit seeking a declaratory judgment determining whether, under the circumstances, it owed any obligations to Bristol Heights under the Policy. Chicago Title had filed a six-count complaint; five of the counts sought a ruling as to Chicago Title's contractual obligations directly owed to Bristol Heights under the Policy and the remaining count was directed as to what rights to indemnification Chicago Title may have against Lewis Volpicella (as grantor of the warranty deed given to Bristol Heights for the Property) if Chicago Title were required to make any payment to Bristol Heights under the Policy.

With its answer and special defenses to the State Court Action complaint, Bristol Heights included a three-count counterclaim for breach of contract, breach of the implied covenant of good faith and fair dealing and violation of the Connecticut Unfair Trade Practices Act. *See* Exhibit B. That same pleading also presented Bristol Heights' counter-cross-claims against Mr. Volpicella.[1] The first claim being for breach of the warranty of title that arose from the tax liens. Ex. B, p. 13: "Counter-Cross-Claims - COUNT ONE: BREACH OF WARRANTY DEED. The State Court Action was tried to the court (Shaban, J.) which subsequently rendered judgment and presented findings of fact and rulings of law in a Memorandum of Decision. *See* Ex. A.

Before the trial in the State Court Action was commenced, Bristol Heights reached a settlement with Mr. Volpicella. To memorialize their agreement, Bristol Heights and Mr. Volpicella

---

[1]  Mr. Volpicella had filed a cross-claim in the State Court Action against Bristol Heights for breach of the promissory note given to him by Bristol Heights when he conveyed the Property.

executed an instrument whereby they mutually released the claims each had made against the other as cross-claims in the State Court Action. To perfect the settlement their trial counsel each executed a Form JD-CV-41 Withdrawal and filed it with the Superior Court. Exhibit C shows the Mutual Release of Claims signed by both parties, the Withdrawal of the cross-claims signed by Bristol Heights' counsel as filed with the Superior Court and the Addendum to Mutual Release of Claims along with the Stipulation signed by Mr. Volpicella.

The Mutual Release of Claims, ¶ 2 provides:

> Bristol Heights will withdraw its counter-cross-claim against Mr. Volpicella in the same case [UWY CV 07-402047] alleging . . . breach of warranty deed, and forever releases any and all such claims, known or unknown against Volpicella, based on the conduct alleged therein and/or any conduct occurring up to the date of this document.

After Bristol Heights and Mr. Volpicella filed their withdrawals with the Superior Court they executed the Addendum to Mutual Release of Claims. The significant text in that document is:

> Lew Volpicella stipulates that he will not raise the agreement as a defense to Chicago Title's subrogation claim. If necessary to respond to a claim by Chicago Title that they are entitled to discovery of the agreement or that they have a defense to Bristol Heights' claims as a result of the agreement, Mr. Volpicella agrees that he will provide a signed stipulation to Chicago Title, Bristol Heights and the court, stating: "I, Lew Volpicella, hereby stipulate that I will not raise any agreement between myself and Bristol Heights concerning the withdrawals of our respective cross-claims as a defense to Chicago Title's subrogation claim, and hereby waive any such defense. I do not waive any other defenses to [Chicago Title's ] subrogation claim."
> Mr. Volpicella acknowledges that it would be a breach of the agreement if he raised the agreement as a defense to Chicago Title's subrogation claim and thereby defeated or diminished Bristol Heights' ability to recover, and that if he raises such a defense the agreement is void and both parties could pursue the claims that are the subject of the agreement. Bristol Heights stipulates that once Mr. Volpicella signs this Addendum and provides the above-quoted written stipulation/waiver (if necessary to respond to a claim by Chicago Title that they are entitled to discovery of the agreement or that they have a defense to Bristol Heights' claims as a result of the agreement), there can be no claim by Bristol Heights of breach of the agreement by Mr. Volpicella, and Bristol Heights cannot pursue any of the claims that were released in said agreement, even in the event Chicago Title obtains the agreement through a discovery order and successfully uses the agreement to defeat or diminish Bristol Heights' claim.

3

***First Federal Court Action***:      Three months after Bristol Heights released Mr. Volpicella for any claim under the warranty deed for the Property – and while the State Court Action was pending – Bristol Heights commenced an action in this Court against the defendant: *Bristol Heights Assocs., LLC v. Chicago Title Ins. Co.*, 3:10-CV-00154 (RNC) ("First Federal Court Action"). *See* Exhibit D, First Federal Court Action Complaint. Because of the pending State Court Action, Chicago Title moved to have the First Federal Court Action dismissed under the abstention doctrine enunciated by the Supreme Court in *Colorado River Water Conservation Dist. v. United States*, 424 US 800 (1976). On February 18, 2011, this Court (Chatigny, J.) granted Chicago Title's motion. *See* Exhibit E, Ruling and Order.

In its Ruling and Order, this Court noted, and found, that although Bristol Heights had expressed concern over the prejudices it would suffer due to the delays in the State Court Action, in fact, the actual reason Bristol Heights brought the First Federal Court Action was simply in reaction to the adverse summary judgment as to two of its counterclaims in the State Court Action. Ex. E at 2-3. Because Bristol Heights had withdrawn its remaining counterclaim in the State Court Action immediately prior to commencing the First Federal Court Action, this Court initially agreed to merely stay the federal case to see if the Superior Court would restore the withdrawn counterclaim and accelerate the trial (which relief the Superior Court did order). *Id*. at 2-5. Although the Superior Court granted Bristol Heights its requested relief (thus satisfying this Court's concerns) Bristol Heights nonetheless filed an emergency motion before Judge Chatigny to have his stay lifted and have the First Federal Court Action proceed (*id*.); but this Court did not grant the motion. Later, when this Court observed that the trial had been commenced in the State Court Action it dismissed the First Federal Court Action. *Id*. at 6. In dismissing the case, this Court found that the State Court Action and the First Federal Court Action were parallel proceedings and that the issues and relief sought in both cases were substantially the same. *Id.* at 7 n. 5. This Court ruled that it could not find that the procedures available in state court were inadequate to protect Bristol Heights' claims. *Id*. at 9. (Bristol Heights appealed that order to the Second Circuit Court of Appeals: Case 11-1115.)

***State Court Judgment***:      Shortly after the dismissal of the First Federal Court Action, Superior

Court Judge Dan Shaban presided over the trial in the State Court Action and subsequently filed the

State Court Judgment (Ex. A). In its decision the Superior Court made the findings of fact and law

stated below.

The Property had been approved as a 147-lot subdivision but, in 1994, after the approval

expired, the City of Bristol (the "City") filed a Notice of Expiration of Subdivision in the land

records. Ex. A at 3. Subsequently, Mr. Volpicella bought the Property from PB Real Estate, Inc. *Id*.

The City never sent him a bill for the 1993 Grand List tax assessment for the Property. *Id*. In 1995,

the City filed tax liens on the Property under the name of the prior owner, PB Real Estate, Inc.; the

liens were filed against the 147 individual but-no-longer-valid lots. *Id*. Mr. Volpicella did pay all of

the taxes on the Property for later grand lists but the City did not apply the payments to the oldest

past-due obligations as required by CGS § 12-144b. *Id*. at 4.

In 2003, as part of a development plan, Mr. Volpicella conveyed the Property to Bristol

Heights (in which he had a 25% membership interest) in consideration for an $800,000 promissory

note. *Id*. It was in conjunction with that conveyance that Bristol Heights purchased the Policy from

Chicago Title. *Id*. at 5.

In 2005, the City wrote to Bristol Heights demanding payment of the taxes assessed on the

1993 Grand List. *Id*. Bristol Heights did not demand that Mr. Volpicella pay the delinquent taxes

pursuant to his warranty of title. *Id*. at 5-6. Bristol Heights did meet with the City tax collector who

agreed to allow Bristol Heights time to address the matter and told the plaintiff that he would take

no immediate action against the development project. *Id*. at 6. Thereafter, Mr. Kuzmak met with

Philip Fanning, counsel for Chicago Title, to discuss the tax liens as a title issue under the Policy.

*Id*. At the meeting Mr. Kuzmak told Chicago Title not to do anything about the liens at that moment

because the money debt Mr. Volpicella under the promissory note exceeded the tax lien amount and

the validity of the liens were in question. *Id.* Mr. Kuzmak, along with Mr. Volpicella's attorney, then engaged in efforts with the City to resolve the tax issue by explaining to the City the argument that the liens were possibly not valid and that the amount of the assessment was incorrect. *Id.* at 7.[2] During this time Bristol Heights maintained that any tax liability was ultimately the responsibility of Mr. Volpicella but still never demanded that Mr. Volpicella make the payment. *Id.* at 7-8.[3]

During the time that Bristol Heights was discussing the tax liens with the City it was also engaged in efforts to refinance the mortgage it had on the Property but it did not inform Chicago Title that it was doing so. *Id.* In December 2005, Bristol Heights submitted a formal claim under the Policy to Chicago Title. *Id.* Chicago Title assigned Norma Levy as its attorney to investigate the claim. *Id.* When Bristol Heights learned that the City was contemplating foreclosing the tax liens, Mr. Kuzmak sent a fax to Mr. Fanning and the Chicago Title claims center. *Id.* Ms. Levy immediately investigated whether the liens were valid and enforceable and whether there were any defenses. *Id.* at 8-9. Mr. Kuzmak sent to Ms. Levy the City's demand, the warranty deed from Mr. Volpicella and an e-mail from Mr. Volpicella's attorney acknowledging that under the warranty deed his client was responsible for the taxes. *Id.* at 9. Following her investigation and legal research, Ms. Levy concluded that there were valid defenses to the foreclosure of the City tax liens. *Id.* In her discussions with the City, Ms. Levy had been able to obtain three extensions of time before the City commenced any collection effort and the City never stated that it was going to commence foreclosure of the tax liens. *Id.* at 9-10.

Bristol Heights knew, but never informed either Chicago Title or Mr. Volpicella, that its existing financing secured by the Property matured in February 2006. *Id.* at 10. Despite the concerns

---

[2] Bristol Heights did not invite or request Chicago Title to participate in any of the conferences with the City. *Id.* at 8.

[3] Mr. Volpicella's attorney sent an email to Bristol Heights' attorney, Mr. Kuzmak, acknowledging that his client was ultimately responsible for the tax liens under the warranty deed. *Id.* at 9.

of its attorney, Mr. Kuzmak, that the tax liens were not valid, Bristol Heights nevertheless paid the taxes in full on March 8, 2006. *Id*. Bristol Heights stipulated at trial that it neither informed Chicago Title nor obtained its consent prior to paying the taxes. *Id*. One member of Bristol Heights testified that at the time the taxes were paid there was no foreclosure threatened by the lender and that the purpose of the refinancing was to further the work on the project. *Id*.

Prior to the payment of the taxes, Ms. Levy, as part of her investigation, had requested documents and testimony from Bristol Heights as provided under the Policy. *Id*. Bristol Heights responded to these requests by refusing to cooperate and threatening to sue Chicago Title. *Id*. at 10-11. Bristol Heights had already made one complaint to the Connecticut Insurance Commissioner and threatened to file another. *Id*. at 11. Ms. Levy made repeated written requests for documents and, on February 23, 2006, Bristol Heights wrote in response that it was denying the requests for documents and testimony. *Id*.

On February 24, 2006, Bristol Heights closed on the refinancing and at the closing a check for the full payment of the taxes was issued and was subsequently received by the City on March 8, 2006. *Id*. at 12. Mr. Volpicella suggested to Bristol Heights that the City's tax claim could be handled by offsetting the payment by the amount owed him under the promissory note. *Id*.

On June 19, 2006, Bristol Heights initiated arbitration under the Policy. *Id*. at 13. On July 21, Bristol Heights submitted to deposition examination and produced the documents Chicago Title had been requesting since January 2006. *Id*. The arbitration hearing was scheduled for November 21, 2006 but on November 6 Bristol Heights withdrew the arbitration claim. *Id*. Chicago Title has never been able to complete its coverage investigation; Bristol Heights stipulated that it did not cooperate prior to the tax payment; and it did not cooperate relative to the arbitration. *Id*.

The Superior Court ruled that:

The evidence clearly established that the election of [Bristol Heights] to make payment was not based upon the fear of losing title to the Property, but rather, to conclude a refinance so

7

as to forward its business expectations. This was a voluntary act and choice on the part of [Bristol Heights]. This is particularly so in the context of the purpose of the Policy (to protect the insured's title from claims adverse to it) when the evidence established that there was no pending claim of foreclosure against the Property at that time.

*Id*. at 17. The court noted that Bristol Heights' failure to obtain Chicago Title's consent to the tax payment alone was not sufficient to excuse Chicago Title's Policy obligations but rather that Chicago Title also needed to show that it was prejudiced thereby. *Id*. at 18. The trial court found that Chicago Title *was* prejudiced because it lost the ability to: (1) challenge the application of the earlier tax payments under CGS § 12-144b; (2) contest the validity of the liens for lack of proper notice to the owner and incorrect description of the Property; and (3) dispute the assessment as too high since it was based on 147 parcels and not one. *Id*. The Superior Court ruled:

> The court finds that under the circumstances of this case, [Bristol Heights'] actions breached the terms of paragraph 9(c) of the Policy *and thereby terminated* [*Chicago Title's*] *obligations under it*. . . . [Chicago Title] is therefore not liable for any loss or damage suffered by [Bristol Heights] through such payment.

*Id*. at 18-19 (citation omitted, emphasis added). The trial court then considered the effect of Bristol Heights' failure to cooperate with Chicago Title's investigation of the claim and ruled:

> The court finds that under the circumstances of this case, [Bristol Heights'] actions breached the terms of paragraph 5 of the Policy *and thereby terminated* [*Chicago Title's*] *obligations under it*. Such breach resulted in prejudice to [Chicago Title's] ability to determine whether coverage applied and to prevent loss or damage to [Bristol Heights]. [Chicago Title] is therefore not liable for any loss or damage suffered by [Bristol Heights] through its payment of the tax liens.

*Id*. at 21 (citation omitted, emphasis added).

Regarding the counterclaim filed by Bristol Heights, the Superior Court found:

> In its counterclaim, [Bristol Heights] contends that [Chicago Title] breached the terms of the title insurance policy by not defending the City's claim for taxes, unreasonably delaying its investigation of the claim, and by failing to pay or settle the claim.
> . . .
> As noted above, the parties stipulated during the trial that [Bristol Heights] failed to cooperate with Chicago Title's coverage investigation prior to paying the City's tax claim

in full on March 8, 2006, and, that it neither notified Chicago Title nor obtained its consent prior to doing so. The court finds that based on those stipulations and the facts set forth above, [Bristol

Heights] did breach the terms of the Policy, specifically paragraph 5 (submission to examination under oath at reasonable times and places; production of documents), and paragraph 9(c) (voluntarily settling claim without prior written consent of plaintiff). It further finds that Chicago Title did not breach the terms of the Policy.

. . .

> Moreover, at the time [Bristol Heights] voluntarily elected to pay the taxes, no litigation had been brought by the City to foreclose on the Property. There was therefore no imminent danger to [Bristol Heights] that it would lose title to the Property. The payment of the taxes was made not to protect its interest in title to the Property, but rather to refinance the company's debt and further its business purpose. [Chicago Title] therefore had no obligation compelling it to immediately defend the claim by paying the debt.

*Id*. at 24-25. "The defendant has failed to establish by a preponderance of the evidence the allegations of breach of contract in its counterclaim." *Id*. at 26. Bristol Heights then appealed the State Court Judgment to the Connecticut Appellate Court. Case no. AC 34040.

***Federal Appeal*:**     As noted above, Bristol Heights appealed this Court's order dismissing the First Federal Court Action. Second Circuit Court of Appeals, Case 11-1115. After the Superior Court rendered judgment in the State Court Action, the Court of Appeals heard Chicago Title's motion to dismiss the appeal. The decision of the Court of Appeals reads in full:

> Appellee, through counsel, moves to dismiss the appeal as moot. Upon due consideration, it is hereby ORDERED that the motion is GRANTED because the Connecticut Superior Court's August 18, 2011 final judgment in the parallel state court action precludes further proceedings in federal court based on the same factual assertions. *See O'Connor v. Pierson*, 568 F.3d 64, 69 (2d Cir. 2009) ("A federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered."); *Joe's Pizza, Inc. v. Aetna Life & Casualty Co.*, 236 Conn. 836, 871-72 (1996) (explaining that "[c]laim preclusion prevents the pursuit of any claims relating to the cause of action which were actually made or might have been made"); *Salem Park, Inc. v. Salem*, 149 Conn. 141, 144 (1961) (holding that trial court judgment is final for *res judicata* purposes notwithstanding a pending appeal).

*See* Exhibit F.

## Statement of Facts

The same facts alleged by the plaintiff in the Complaint in this action were alleged in the complaint filed in the First Federal Court Action (Ex. D). A comparison of the pleadings from the

First Federal Court Action with the Complaint in this action will demonstrate how the factual assertions are identical.

- Chicago Title wrote Bristol Heights a title policy for a parcel of land in Bristol, Connecticut that was conveyed to Bristol Heights "via warranty deed" from Lew Volpicella. Complaint - Count One ¶¶ 1 & 2; Ex. D ¶¶ 1 & 2.

- In 2005, the City of Bristol tax collector sent Bristol Heights a demand for payment of taxes due from the 1993 Grand List. The City had filed liens for those taxes but had erroneously recorded them under the name of a former owner. Bristol Heights subsequently paid the taxes under protest to clear the liens. Complaint - Count One ¶¶ 3 & 4; Ex. D ¶¶ 3 - 5, 13 & 14.

- Chicago Title did not bring an action for a refund of the tax payment. Complaint - Count One ¶ 5; Ex. D ¶¶ 16 & 18.

- Chicago Title did bring an action in Superior Court against Bristol Heights seeking a judicial declaration of its obligations owed to Bristol Heights under the title policy but did not seek to recover any damages from Lew Volpicella in behalf of Bristol Heights. Complaint - Count One ¶¶ 6-8; Ex. D ¶¶ 8, 18 & 19.

- A claim existed against Mr. Volpicella at the time the respective pleadings were filed. Complaint - Count One ¶ 9; Ex. D ¶¶ 18 & 19.

- Mr. Volpicella had assets that could satisfy a judgment against him. Complaint - Count One ¶ 10; Ex. D ¶ 20.

- Chicago Title owed Bristol Heights a duty of care to preserve the ability for it to recover its losses suffered by Mr. Volpicella's breach of title warranty; Chicago Title breached that duty. Complaint - Count One ¶¶ 11 & 12; Ex. D ¶¶ 11, 12 & 19.

- Bristol Heights has been damaged by Chicago Title's breach for the sum that could have been recovered from Mr. Volpicella for his breach of warranty. Complaint - Count One ¶ 13; Ex. D ¶¶ 20 & 21.

• Chicago Title owed Bristol Heights a contractual duty to recover losses from Mr. Volpicella, which duty it breached. Complaint - Count Two ¶¶ 11 & 12; Ex. D ¶¶ 18 & 19.

The plaintiff's current counsel, Stacie Zimmerman, did not represent Bristol Heights in the State Court Action, the First Federal Court Action, the appeal of the dismissal of the First Federal Court Action to Second Circuit Court of Appeals or any other proceedings between the parties; however, Bruce P. Matzkin, Esq. *did*. Ms. Zimmerman has represented in writing that Mr. Matzkin is her professional associate. *See* Ms. Zimmerman's January 8, 2013 email attached to Declaration of Michael J. Leventhal executed January 29, 2013 (Ex A, p. 7 of 60 in document 26-2).

Chicago Title served subpoenas on Mr. Volpicella's State Court Action counsel (using Administrative Office of the United States Courts Form AO 88B) seeking production of the documents memorializing any settlement between Mr. Volpicella and Bristol Heights. Ms. Zimmerman signed and filed a Motion to Quash wherein she falsely represented: "[T]he subpoenaed information involves confidential and privileged communication between members of an LLC and counsel. . . ." Document 14, p. 2 of 3. The falsity of her representation to this Court was apparent when, following Ms. Zimmerman filing of the Withdraw [*sic*] of Motion to Quash Subpoena (document 23), Mr. Volpicella's State Court Action counsel produced the documents presented in Exhibit C (including a counterpart to the Addendum signed by Bristol Heights that was not part of Exhibit C but excepting the Withdrawal form filed with the Superior Court). A reading shows that none of these documents were privileged attorney-client communication or even work product.

Ms. Zimmerman also falsely represented to this Court that "Defendant's counsel did not mention his intention to subpoena third parties, although he and the undersigned spoke in a telephone conference on the afternoon of January 9 for conferring on the Rule 26(f) report." Document 14, p. 2 of 3. In fact, the written communication with her shows that Chicago Title's counsel explicitly stated his intentions to seek discovery from Mr. Volpicella and his counsel regarding the presumed

settlement reached with Bristol Heights. *See* Document19-1, pp. 55-56 of 63, January 16, 2013 Declaration of Michael J. Leventhal, ¶¶ 6-10.

On January 10, 2013, after the subpoenas were served on Mr. Volpicella's counsel, Ms. Zimmerman sent an email to Chicago Title's counsel representing to him that subpoenas sought privileged materials. *See Id.,* ¶ 12. She then requested a reply to her email confirming that there would be a conference about the subpoenas. *Id.* Chicago Title's counsel replied within minutes that he would call her, which he did. *Id.* ¶ 13. Ms Zimmerman did not answer the call; Chicago Title's counsel sent another email confirming that he was available to discuss the subpoenas. *Id.* Ms. Zimmerman never did discuss her concerns but simply filed the Motion to Quash with the false representation as to the privileged nature of the materials sought.

Ms. Zimmerman has now had deposition subpoenas served on Chicago Title's State Court Action trial counsel specifying Mr. Matzkin's office as the venue of the examinations. *See* Declarations of Edward V. O'Hanlan, Esq. and Christopher Girard both executed January 28, 2013 (Exs B & C, pp. 20- 29 of 60 in document 26-2). Prior to filing a motion for protective order, Chicago Title's counsel arranged a conference with Ms Zimmerman as required by D.Conn.L.Civ.R. 37. During that conference, Ms. Zimmerman stated the only one reason she had for the deposition examination of Mssrs. O'Hanlan and Girard was she did not understand Chicago Title's affirmative defense of res judicata and therefore needed to depose *both* attorneys from the State Court Action. *See* January 29 Declaration of Michael J. Leventhal, pp. 1- 19 of 60 in document 26-2. It was pointed out that all the information concerning the application of the doctrine of res judicata or for collateral estoppel would be found in the pleadings, papers and decisions in the State Court Action and the First Federal Court Action. *Id.* Ms. Zimmerman nevertheless insisted in conducting the depositions; her insistence required Chicago Title to file a motion for protective order. Document 26.

### Argument

The plaintiff, Bristol Heights, by its counsel, Stacie Zimmerman, has presented to this Court a two-count Complaint against the defendant, Chicago Title, regarding the parties' rights, obligations and performance under the Policy: negligence and breach of contract for failing to bring suit against Mr. Volpicella under the warranty deed. However, the plaintiff has no reasonable possibility of prevailing on the merits of its claims. Bristol Heights has released Mr. Volpicella for any claim for breach of warranty of title. Even if Chicago Title had an obligation under the Policy to bring an action in Bristol Heights' name against Mr. Volpicella it could not have done so and still truthfully certified the tacit representations under Fed.R.Civ.P. 11(b)(1),(2) & (3). In Complaint ¶¶ 8-13, Ms. Zimmerman appears to allege that Chicago Title could have sued Mr. Volpicella in its own name, but that would only be possible if Chicago Title had some right to subrogation of Bristol Heights' claim under the warranty deed. This, of course, is not possible because Chicago Title, as an insurer, can only acquire subrogation rights after first satisfying any claim Bristol Heights may have had against Mr. Volpicella. Since the Superior Court ruled that Chicago Title did not owe Bristol Heights any obligation under the Policy to pay for the tax lien claim, Chicago Title has not paid Bristol Heights any claim under the Policy, hence Chicago Title has no subrogation claim it could maintain against Mr. Volpicella in its own name.

Furthermore, the claims presented in this action are precluded by the doctrine of res judicata and the issues dispositive of the plaintiff's claims were already necessarily decided in the State Court Action and consequently cannot be re-litigated by Bristol Heights. The plaintiff cannot present either of its causes of action as they are barred by the applicable statutes of limitations.

Even if the plaintiff had viable claims in this action it had elected not to mitigate its claim when it had the opportunity and it would not be entitled to an award of any damages. The plaintiff

decided to reject Mr. Volpicella's early offers to fully compensate Bristol Heights for its injury arising from the tax liens. Later, Bristol Heights decided to abandon its cross-claim against Mr. Volpicella without testing the merits of its claim.

Ms. Zimmerman has indicated in the Complaint, in the Form 26(f) Report and in other papers that the plaintiff intends to contest the factual findings and legal rulings of the Superior Court in the State Court Action. Under the *Rooker-Feldman* doctrine, Bristol Heights cannot seek to have this Court review the State Court Judgment and it is improper for her to do so. Ms. Zimmerman's conduct of this case unreasonably and vexatiously multiplies the proceedings so as to subject her to the sanctions under 28 USC § 1927.

When Ms. Zimmerman signed the Complaint and presented it to this Court she tacitly certified it was not being presented for any improper purpose (such as to harass or needlessly increase the cost of litigation) and further certified the claims and other legal contentions are warranted by existing law. Fed.R.Civ.P. 11(b). When Ms. Zimmerman signed the Complaint wherein Bristol Heights claims damages because Chicago Title did not sue Mr. Volpicella for breach of the warranty deed she did so despite these facts (as the court found in the State Court Judgment):

(1) that Bristol Heights' attorney instructed Chicago Title not to do anything about the tax liens because the money owed Mr. Volpicella under the $800,000 promissory note exceeded the amount of the liens;

(2) that Bristol Heights itself never made any demand for payment from Mr. Volpicella;

(3) that Mr. Volpicella's attorney sent a written acknowledgment to Bristol Heights' attorney that Mr. Volpicella was ultimately responsible for the tax liens under the warranty deed; and

(4) that Mr. Volpicella himself offered to offset Bristol Heights' tax payment to the City against the amount owed him under the $800,000 promissory note.

14

Most significantly, Ms. Zimmerman signed the pleadings alleging that Chicago Title had an obligation to bring an action against Mr. Volpicella *after* Bristol Heights released him from that very claim.[4]

This action is eminently unnecessary. Mr. Volpicella had from the outset of this dispute conceded that he owed an obligation to Bristol Heights under the warranty deed for payment of the tax liens and he offered to offset the lien payment. Yet Bristol Heights chose not to accept Mr. Volpicella's offer or to make any formal demand of him prior to making the cross-claim. The remedy that Bristol Heights claims has been lost because the statutes of limitation now bars any action against Mr. Volpicella for enforcement of the warranty of title was always available to Bristol Heights *without* litigation. Bristol Heights could have accepted Mr. Volpicella's offer which would have resolved the entire claim. Then after Bristol Heights *did* assert a claim for warranty of title in the State Court Action it released Mr. Volpicella.[5] In light of those circumstances, when Ms. Zimmerman presented the Complaint to this Court, she did so for an improper purpose and thus she has violated Fed.R.Civ.P. 11(b) and is subject to sanctions under Rule 11(c). She is further subject to sanctions under Rule 11 for advancing claims which the law does not warrant.

## I.   BRISTOL HEIGHTS HAS NO REASONABLE POSSIBILITY OF PREVAILING ON ITS CLAIMS IN THIS ACTION

The plaintiff cannot sustain either of its claims presented in the Complaint. This is so because: (a) Bristol Heights has released Mr. Volpicella, thus preventing any claim being brought against him; in addition, the plaintiff cannot prevail on the grounds set forth in the defendant's affirmative defenses: (b) the claims are barred by the doctrine of res judicata, (c) the issue of Bristol

---

[4]  As had her ostensible associate, Bruce Matzkin, Esq., in the First Federal Court Action.

[5]  Significantly, Ms. Zimmerman has attempted to prevent Chicago Title from seeing the settlement documents in discovery.

Heights' breach of the Policy thus relieving Chicago Title from any contractual obligations owed to Bristol Heights' has been decided in the State Court and (d) the plaintiff is barred from arguing the issue in this action, the negligence count is barred by the statute of limitation as is the breach of contract count. Bristol Heights had the opportunity to mitigate its damages by accepting his settlement offers, by maintaining its cross-claim action against Mr. Volpicella or by initiating an independent action for breach of warranty of title. Bristol Heights' failure to mitigate its damages would eliminate any award of damages even if it did have viable claims in this action. And Bristol Heights cannot overcome all those obstacles by asking this federal court to in effect review the rulings of the Superior Court in the State Court Action.

### A. Plaintiff's Release of Mr. Volpicella Renders Claims Impotent or Moot.

It is well understood jurisprudence that a release bars the party releasing the other party from later bringing an action on the matters specified in the releasing instrument. "[T]he term[ ] 'release' [has a] well established meaning[; it] . . . is an agreement to give up or discharge a claim. It terminates litigation or a dispute and is meant to be a final expression of settlement." *Viera v. Cohen*, 283 Conn. 412, 427-28, 927 A.2d 843, 854 (2007)(citations omitted). "Accordingly, releases and settlements represent a surrender of a cause of action, perhaps for a consideration less than the injury received but, nevertheless, a surrender pursuant to an agreement." *Id.*, 283 Conn. at 428-29, 927 A.2d at 854-55. The Mutual Release, including its Addendum, releases Mr. Volpicella from any claim by Bristol Heights for "breach of warranty deed." Thus, Chicago Title could never maintain an action for breach of warranty where Bristol Heights is the plaintiff.

The Mutual Release and the Addendum exclude any subrogation claim that Chicago Title may bring against Mr. Volpicella under the warranty of title. To the extent that Bristol Heights contends by its allegations in Complaint ¶¶ 8-13 that it was possible for Chicago Title to bring an action in its name and thereby avoid the legal consequences of Bristol Heights' release of Mr.

Volpicella then Bristol Heights must be alluding to a subrogation claim. The Connecticut Appellate

Court recently stated:

> In its simplest form, subrogation allows a party who has paid a debt to 'step into the shoes' of another (usually the debtee) to assume his or her legal rights against a third party to prevent that party's unjust enrichment. In that way, an insurance company, for example, can be substituted for the insured in an action against a third party tortfeasor. The insured, having been paid by the insurer, in essence, transfers his rights against the tortfeasor to the insurer. The insurer, thus, can attempt to collect from the party that caused the loss to the extent expended by the insurer in satisfying the claim.

*Rathbun v. Health Net of the NE., Inc.*, 133 Conn.App. 202, 211, 35 A.3d 320, 327; *cert. granted*

*on other issue,* 304 Conn. 905, 38 A.3d 1201 (2012)(citation and internal quotation marks omitted).

The last sentence from that text indicates that Chicago Title has never had a subrogation claim that

it could bring against Mr. Volpicella because Chicago Title never suffered a 'loss expended as an

insurer in satisfying the claim.' The Court of Appeals for the Second Circuit states it even clearer.

Before an insurer has a right to subrogation that insurer must first pay the underlying claim:

> In Connecticut, insurance companies have an equitable right of subrogation at common law even in the absence of express contract terms to that effect. The right of legal or equitable subrogation is not a matter of contract; it does not arise from any contractual relationship between the parties, but takes place as a matter of equity, with or without an agreement to that effect. This equitable right of subrogation is subject to the 'make whole doctrine,' which provides that the insurer may enforce its subrogation rights only after the insured has been fully compensated for all of its loss.

*Fireman's Fund Ins. Co. v. TD Banknorth Ins. Agency Inc.*, 644 F.3d 166, 169 (2d Cir. 2011)

(citations and internal quotation marks omitted). Chicago Title has not paid the tax lien claim, the

Superior Court ruled in the State Court Action that Chicago Title has no obligation to reimburse

Bristol Heights for satisfying tax liens, therefore Chicago Title has no right or ability to bring an

action in its name against Mr. Volpicella.

In *Lumbermens Mut. Cas. Co. v. RGIS Inventory Specialists, LLC*, the Second Circuit Court

of Appeals ruled that the case was moot after a settlement was reached between the parties and

dismissed the appeal. 356 F. App'x 452, 454 (2d Cir. 2009). "A party's case or controversy becomes

moot . . . when it becomes impossible for the courts, through the exercise of their remedial powers, to do anything to redress the injury." *Alexander v. Yale Univ.*, 631 F.2d 178, 183 (2d Cir. 1980); *see also*, *Sackman v. The Liggett Group, Inc.*, 189 FRD 58, 59 (EDNY 1999)(citing *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship,* 513 US 18, 19, 115 S.Ct. 386 (1994)(case is mooted when the claim is resolved by a settlement agreement).

Because Bristol Heights released Mr. Volpicella for any breach of the warranty deed for the Property no claim can be brought by Chicago Title against Mr. Volpicella in the name of Bristol Heights. Because the Superior Court found after trial that Chicago Title had no obligation to pay Bristol Heights as reimbursement for the tax lien payment, Chicago Title did not pay anything to Bristol Heights under the Policy. Because Chicago Title did not pay Bristol Heights it did not ever have any subrogation claim to assert against Mr. Volpicella. Because Chicago Title could not bring an action against Mr. Volpicella for breach of the warranty deed either in the name of Bristol Heights or in its own name, the claim of negligence in Count One of the Complaint and the claim for breach of contract in Count Two are moot.

### B.  Plaintiff's Claims are Barred by Res Judicata.

In the State Court Action the Superior Court ruled that Bristol Heights' breach of the Policy had terminated Chicago Title's obligations to Bristol Heights under that Policy. Both claim preclusion and issue preclusion keep Bristol Heights from successfully pursuing its claims. The Bristol Heights' counterclaim for breach of contract was already decided in favor of Chicago Title in the State Court Action. The Superior Court rendered judgment in favor Chicago Title as to Bristol Heights' counterclaim of breach of contract because it found that Chicago Title did not breach any contractual obligation owed to Bristol Heights under the Policy.

In the First Federal Court Action, Bristol Heights made repeated allegations as to how Chicago Title had failed to 'recover the amount of the tax lien from Mr. Volpicella for his breach

of the Warranty Deed.' This Court found in the Ruling and Order that Bristol Heights had filed a counterclaim in the State Court Action 'which included the same breach of contract, bad faith and CUTPA claims contained in the complaint it filed' in the First Federal Court Action. Subsequently, the Court of Appeals dismissed the appeal of the First Federal Court Action '*because the Connecticut Superior Court's* [*State Court Judgment*] *in the parallel state court action precludes further proceedings in federal court based on the same factual assertions*.' The Second Circuit explicitly invoked the doctrine of res judicata in its ruling and found that Bristol Heights was barred from bring such claims in federal court.[6] Bristol Heights was precluded from asserting the claims it made in the First Federal Court Action. As demonstrated above, the same factual assertions are being made in this action as the in the First Federal Court Action. There is no question that in Count One of the complaint in the First Federal Court Action that Bristol Heights charged that Chicago Title breached its contractual obligation under the Policy by failing to bring suit for warranty of title against Mr. Volpicella. Ex. D, ¶¶ 2, 8 & 19. Those allegations regarding Chicago Title's alleged duty to sue Mr. Volpicella were incorporated in the other three counts for misrepresentation, breach of the implied covenant of good faith and fair dealing, and violation of the Connecticut Unfair Trade Practices Act. Ex. D.  Bristol Heights has brought an action in this Court for breach of contract for, among other alleged contractual obligations, failing to sue Mr. Volpicella.  The Court of Appeals ruled that Bristol Heights could not bring any of those causes of action in federal court after the State Court Judgment.

Count Two in the Complaint in this action, the breach of contract claim, is precluded by the prior decisions in both the State Court Action and the First Federal Court Action. Count One, the

---

[6] However (and in disregard of the ruling by the Court of Appeals), Ms. Zimmerman has nevertheless made the same factual assertions in the Complaint in this action as were made in the State Court Action and the First Federal Court Action.

negligence claim, is a claim that could have been made in the First Federal Court Action. It too is precluded. This Court looked at the claims made in the First Federal Court Action and found them all be related to the breach of contract made in the State Court Action:

> In the [S]tate [C]ourt [A]ction, Bristol Heights had filed a counterclaim, which included the same breach of contract, bad faith and CUTPA claims contained in the complaint it filed here. On December 23, 2009, the Superior Court had granted Chicago Title's motion for summary judgment on the latter two claims, and, on February 1, 2010, it had denied Bristol Heights' motion to reargue, prompting Bristol Heights to take the extraordinary steps of commencing a new action in this court and withdrawing the state court counterclaim in full.

Ex. D, Ruling and Order at 2. "Bristol Heights sought a trial on its breach of contract claim, which it characterized as its 'chief claim,' while agreeing to voluntarily dismiss its [bad faith and CUTPA] claims, which had been dismissed in state court. [T]hose claims relate[d] directly to the contract dispute." *Id.*, at 7 n. 5. The negligence claim made in Count One of this action relates directly to the contract dispute and could have been made in the First Federal Court Action. That claim is precluded as one that could have been made in the earlier actions.

Bristol Heights cannot avail itself of any argument that either this Court or the Second Circuit Court of Appeals misapplied the doctrine of res judicata as to its claims. As the Supreme Court held:

> There is little to be added to the doctrine of res judicata as developed in the case law of this Court. A final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. Nor are the res judicata consequences of a final, unappealed judgment on the merits altered by the fact that the judgment may have been wrong or rested on a legal principle subsequently overruled in another case. As this Court explained in *Baltimore S.S. Co. v. Phillips*, [ ] an "erroneous conclusion" reached by the court in the first suit does not deprive the defendants in the second action "of their right to rely upon the plea of *res judicata*. . . . A judgment merely voidable because based upon an erroneous view of the law is not open to collateral attack, but can be corrected only by a direct review and not by bringing another action upon the same cause of action." We have observed that "the indulgence of a contrary view would result in creating elements of uncertainty and confusion and in undermining the conclusive character of judgments, consequences which it was the very purpose of the doctrine of *res judicata* to avert." *Reed v. Allen*, 286 US 191, 201 [ ] (1932).

*Federated Dept. Stores, Inc. v. Moitie*, 452 US 394, 398-99, 101 S.Ct. 2424, 2428, 69 L. Ed. 2d 103 (1981)(some internal citations omitted).

20

The Court of Appeals left Bristol Heights no room to come back to this Court again on the same factual assertion when it ruled to dismiss the appeal of Judge Chatigny's decision. The higher court granted the motion to dismiss "because the Connecticut Superior Court's August 18, 2011 final judgment in the parallel state court action precludes further proceedings in federal court based on the same factual assertions." Ex. F. In the decision, the Court of Appeals took the trouble to quote the Connecticut Supreme Court that: (1) claim preclusion prevents the second litigation in another action of any cause of action which 'might have been made,' and (2) res judicata applies notwithstanding the fact that a judgment is pending appeal.

**B. Issues Deciding Plaintiff's Claims Are Already Determined For This Case Under Collateral Estoppel Doctrine.**

It is not simply the claims made in the State Court Action that Bristol Heights is barred from relitigating in this action it is also the issues that were necessarily decided in the State Court Action. Thus the plaintiff cannot overcome the finding by the Superior Court it had failed to cooperate in the investigation of its claim as required under the Policy, and that it voluntarily and unilaterally made the payment to satisfy the tax liens[7] to the prejudice of Chicago Title. The Superior Court noted that Connecticut provides "it is a general rule of contract law that a total breach of the contract by one

---

[7]  Ms. Zimmerman has the plaintiff allege in Complaint ¶ 4:
"On March 8, 2006 Bristol Heights paid the Bristol Tax Collector $200,341.31 in order to clear the liens from its title, and– following the directive of [Chicago Title's] claim attorney – included with its payment a letter stating that Bristol Heights protested and disputed the taxes and reserved the right to seek a refund in a later court action." This allegation as any directive from the defendant's claim attorney utterly contradicts the finding of the Superior Court:
"As of March 8, 2006, the City had neither initiated a foreclosure action nor referred the matter to outside counsel for collection. Well before that date, Kuzmak had conveyed directly to [Bristol Heights] his concerns about the validity of the liens and the fact that they may not be collectible. Nonetheless, on that date, [Bristol Heights] paid the tax liens in full. [ ] *It was stipulated at trial that* [*Bristol Heights*] *did not notify Chicago Title nor did it obtain Chicago Title's consent prior to paying the tax liens on March 8, 2006.*" Ex. A at 10 (emphasis added).

party relieves the injured party of any further duty to perform further obligations under the contract."

Ex. A at 24 (quoting *Shah v. Cover–It, Inc.,* 86 Conn.App. 71, 75, 589 A.2d 959 (2004)).

The issue of whether Chicago Title owes Bristol Heights any duty or obligation under the Policy has been determined in the State Court Action; the Superior Court necessarily determined that Bristol Heights had materially breached the Policy in two manners, first, by failing to cooperate in the investigation of its claim, and second, by voluntarily paying the taxes without Chicago Title's consent resulting in the defendant having no liability to the plaintiff. This issue has been determined and the plaintiff is now precluded from relitigating it by the doctrine of *collateral estoppel*.

> The federal courts generally have also consistently accorded preclusive effect to issues decided by state courts. *E. g., Montana v. United States, supra; Angel v. Bullington*, 330 US 183, 67 S.Ct. 657, 91 L.Ed. 832 [(1946)]. Thus, res judicata and collateral estoppel not only reduce unnecessary litigation and foster reliance on adjudication, but also promote the comity between state and federal courts that has been recognized as a bulwark of the federal system. *See Younger v. Harris*, 401 US 37, 43-45, 91 S.Ct. 746, 750-51, 27 L.Ed.2d 669 [(1971)].

*Allen v. McCurry*, 449 US 90, 95-96, 101 S.Ct. 411, 415, 66 L.Ed. 2d 308 (1980). In Connecticut,

> collateral estoppel precludes a party from relitigating issues and facts actually and necessarily determined in an earlier proceeding between the same parties or those in privity with them upon a different claim. . . . An issue is actually litigated if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined. . . . An issue is necessarily determined if, in the absence of a determination of the issue, the judgment could not have been validly rendered. . . . If an issue has been determined, but the judgment is not dependent upon the determination of the issue, the parties may relitigate the issue in a subsequent action. Findings on nonessential issues usually have the characteristics of dicta. . . . To assert successfully the doctrine of issue preclusion, therefore, a party must establish that the issue sought to be foreclosed actually was litigated and determined in the prior action between the parties or their privies, and that the determination was essential to the decision in the prior case.

*Dowling v. Finley Assocs, Inc.,* 248 Conn. 364, 373–74, 727 A.2d 1245, 1250-51 (1999)(citations & internal quotation marks omitted); *see also Coyle Crete, LLC v. Nevins*, 137 Conn. App. 540, 548-49, 49 A.3d 770, 776 (2012).

As discussed by Judge Shaban in the State Court Judgment, the issues litigated by Bristol Heights and Chicago Title that were necessary to deciding the State Court Action include the fact

that Bristol Heights voluntarily assumed the liability for paying the City to release the tax liens without Chicago Title's consent or awareness; that the way Bristol Heights paid the tax liens was prejudicial to Chicago Title being able to subsequently compromise the amount necessary to secure the release of the tax liens. As a result, any claim for the payment to the City was exempt from coverage under the Policy and Chicago Title was not therefore liable. That issue decides the same obligation Chicago Title may have ever had to litigate a claim against Mr. Volpicella for breach of warranty of title because any such claim would necessarily be predicated on the payment to the City. It is the same result regarding the issue of Bristol Heights breach of their contractual obligation under the Policy when it failed to cooperate with Chicago Title's investigation of their claim.

### C.  Statutes of Limitations Bar Plaintiff's Claims.

Both the negligence claim made in Count One of the Complaint and the breach of contract claim made in Count Two are barred by the applicable statutes of limitations. In this action, Bristol Heights alleges that on August 16, 2005 it received the demand from the City of Bristol for the payment of property taxes that were secured by tax liens on the Property. Complaint, ¶ 3. The plaintiff further alleges that on March 8, 2006 it paid the taxes in order to secure the release of the tax liens. Complaint, ¶ 4. The plaintiff then alleges that Chicago Title could have sued Lew Volpicella for breach of the warranty deed and that such claim accrued August 16, 2005 but the statute of limitation to pursue the claim expired August 16, 2011. Complaint, ¶¶ 8 & 9. The plaintiff claims that the defendant breached a duty of care by failing to bring a breach of warranty action against Mr. Volpicella prior to the expiration of the statute of limitations. Complaint Count One, ¶ 12. The plaintiff claims that the defendant breached a contractual duty by failing to bring a breach of warranty action against Mr. Volpicella prior to the expiration of the statute of limitations. Complaint Count Two, ¶ 12.

Bristol Heights appears to be alleging that the negligence and breach of contract causes of action arose on August 16, 2011. This contradicts the allegations made by Bristol Heights in the First Federal Court Action.[8] In the complaint in that prior action which was filed on February 1, 2010, Bristol Heights was already claiming that Chicago Title had breached its contractual duty to sue Mr. Volpicella for *his* breach of the warranty of title. *See* discussion above, p. 9. Bristol Heights' position in the First Federal Court Action was that Chicago Title had already breached its duty to sue Mr. Volpicella, which duty arose on the day that the City had sent notice to Bristol Heights demanding payment of the taxes secured by the liens. That date was August 16, 2005. If Chicago Title *did* have any duty to sue Mr. Volpicella that duty existed (according to the plaintiff's allegations in the First Federal Court Action) on August 16, 2005.

    1.   <u>Negligence claim is barred by three-year statute of limitation</u>.

Bristol Heights has brought a state-law-based claim of negligence in Count One. Under Connecticut law, a claim "based on negligence, [ ] is subject to the limitation period set forth in § 52-577."[9] *Farnsworth v. O'Doherty*, 85 Conn.App. 145, 148, 856 A.2d 518, 520 (2004). Connecticut General Statutes section 52-577 is an occurrence statute, meaning that the time period within which a plaintiff must commence an action begins to run at the moment the act or omission

---

[8] "Applied to a cause of action, the term to accrue means to arrive; to commence; to come into existence; to become a present enforceable demand. A cause of action 'accrues' when it comes into existence as an enforceable claim, that is, when the right to sue becomes vested. A cause of action must be complete before it can be said to have 'accrued.' While the statute of limitations normally begins to run immediately upon the accrual of the cause of action, some difficulty may arise in determining when the cause or right of action is considered as having accrued. The true test is to establish the time when the plaintiff first could have successfully maintained an action." *Polizos v. Nationwide Mut. Ins. Co.*, 255 Conn. 601, 608-09, 767 A.2d 1202, 1206 (2001)(citations and internal quotation marks omitted).

[9] **CGS § 52-577. Action founded upon a tort.** No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of.

complained of occurs. *Id.* The Connecticut "Supreme Court has stated that 'in construing our general tort statute of limitations, [CGS § 52-577], . . . we have concluded that the history of that legislative choice of language precludes any construction thereof delaying the start of the limitation period until the cause of action has accrued or the injury has occurred.' " *Id.*, 85 Conn.App. at 149, 856 A.2d at 520-21 (quoting *Fichera v. Mine Hill Corp.,* 207 Conn. 204, 212, 541 A.2d 472, 476 (1988)). "The relevant date of the act or omission complained of, as that phrase is used in § 52-577, is the date when the negligent conduct of the defendant occurs and not the date when the plaintiffs first sustain damage." *Id.*, 85 Conn.App. at 149, 856 A.2d at 521.

In this action, Bristol Heights alleges that on August 16, 2005 it received the demand from the City of Bristol for the payment of property taxes that were secured by tax liens on the Property. Complaint, ¶ 3. The plaintiff further alleges that on March 8, 2006 it paid the taxes in order to secure the release of the tax liens. Complaint, ¶ 4. The plaintiff then alleges that Chicago Title could have sued Lew Volpicella for breach of the warranty deed and that such claim accrued August 16, 2005. Complaint, ¶¶ 8 & 9. The plaintiff claims that the defendant breached a duty of care by failing to bring a breach of warranty action against Mr. Volpicella. Complaint, ¶ 12.

In order for the negligence claim made in Count One to be timely under CGS § 52-577, it needed to be brought within three years of August 16, 2005, that is by August 16, 2008. "Section 52-577 is a statute of repose in that it sets a fixed limit after which the tortfeasor will not be held liable and in some cases will serve to bar an action before it accrues." *Farnsworth*, 85 Conn.App. at 148-49, 856 A.2d at 520 (quoting *Rosenfield v. Rogin, Nassau, Caplan, Lassman & Hirtle, LLC*, 69 Conn.App. 151, 159, 795 A.2d 572, 578 (2002)). This action was commenced after the expiration of three-year statute of limitations and Chicago Title cannot be held liable for the claim of negligence.

2.   Breach of contract claim is barred by six-year statute of limitation.

"The law concerning when a breach of contract action accrues is well settled. This court has stated that in an action for breach of contract the cause of action is complete at the time the breach of contract occurs, that is, when the injury has been inflicted." *Tolbert v. Connecticut Gen. Life Ins. Co.*, 257 Conn. 118, 124, 778 A.2d 1, 5 (2001)(citations and internal quotation marks omitted). An action for breach of contract not brought within six years of accrual is barred under CGS § 52-576.[10] Bristol Heights alleges that it was injured when it received notice from the City demanding payment of the tax liens in August 2005. The breach of contract claim was barred after August 2011. If Bristol Heights were to claim in the alternative that it was injured when it paid the City on March 8, 2006 the claim nevertheless was barred after the statute expired in March of 2012, eight months before this action was commenced.

**D. Plaintiff's Failure to Mitigate its Damages Would Eliminate Any Monetary Award.**

Connecticut law on a party's obligation to mitigate its damages before pursuing a claim is straight-forward: "We have often said in the contracts and torts contexts that the party receiving a damage award has a duty to make reasonable efforts to mitigate damages." *Ann Howard's Apricots Rest., Inc. v. Comm'n on Human Rights & Opportunities*, 237 Conn. 209, 229, 676 A.2d 844, 855 (1996)(citations omitted). "We have long adhered to the rule that "one who has been injured by the negligence of another must use reasonable care to promote recovery and prevent any aggravation or increase of the injuries." *Preston v. Keith*, 217 Conn. 12, 15, 584 A.2d 439, 441 (1991)(citation and

---

[10]   **CGS § 52-576. Actions for account or on simple or implied contracts.**
(a) No action for an account, or on any simple or implied contract, or on any contract in writing, shall be brought but within six years after the right of action accrues, except as provided in subsection (b) of this section.
(b) Any person legally incapable of bringing any such action at the accruing of the right of action may sue at any time within three years after becoming legally capable of bringing the action.

internal quotation marks omitted). "To claim successfully that the plaintiff failed to mitigate damages, the defendant must show that the injured party failed to take reasonable action to lessen the damages; that the damages were in fact enhanced by such failure; and that the damages which could have been avoided can be measured with reasonable certainty." *Id.*, 217 Conn. at 22, 584 A.2d at 444 (citation and internal quotation marks omitted). Mitigation of damages or the 'doctrine of avoidable consequences' makes a defendant not liable for consequences preventable by an action that reason requires the plaintiff to take. *Fed. Ins. Co. v. Sabine Towing & Transp. Co., Inc.*, 783 F.2d 347, 350 (2d Cir. 1986). If, as Bristol Heights claims, it had a valid claim against Mr. Volpicella for warranty of title then the reason would require that Bristol Heights commence an action against Mr. Volpicella before the statutes of limitations have expired, or that, once having made such a claim before a court of competent jurisdiction that it not release Mr. Volpicella.

### E.  Under *Rooker-Feldman* Doctrine, This Court Cannot Review State Court Judgment.

Where a federal suit follows a state suit, the former may be prohibited by the *Rooker–Feldman* doctrine in certain circumstances. *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 83 (2d Cir. 2005). Before *Rooker-Feldman* can apply four requirements must be met: first, the federal-court plaintiff must have lost in state court; second, the plaintiff must complain of injuries caused by a state-court judgment; third, the plaintiff must invite district court review and rejection of that judgment; and fourth, the state-court judgment must have been rendered before the district court proceedings commenced. *Id.* at 85. In this action, the first requirement is satisfied as Bristol Heights lost in the State Court Action when the Superior Court rendered judgment in favor of Chicago Title on the three counterclaims and when it ruled that Chicago Title was not required to reimburse Bristol Heights for the tax payment. The fourth requirement too is satisfied because the

State Court Judgment was rendered in August 2011 and this action was commenced fifteen months

later in November 2012.

Regarding the second and third requirements, Bristol Heights alleges in the Complaint:

In Chicago Title Ins. Co. v. Bristol Heights Associates. LLC, UWY-CV07-4020477S, the court declared that coverage of the taxes was not excluded under any policy exclusion asserted by [Chicago Title]. Nevertheless, the court ruled [Chicago Title] did not have to reimburse Bristol Heights for its payment to the Bristol Tax Collector, finding that Bristol Heights (a) had voluntarily paid the taxes, and (b) had delayed in cooperating with [Chicago Title's] investigation, thus somehow prejudicing [Chicago Title's] ability to challenge the taxes.

Complaint, ¶ 6. This allegation is not necessary to allege a cause of action for either negligence or

for breach of the Policy, nor does it appear to otherwise bolster the claims made in the two counts

of Bristol Heights' Complaint. By the construction of the text of the allegation it appears Bristol

Heights is seeking to have this Court consider whether the Superior Court's decision is flawed: 'the

court declared that coverage of the taxes was not excluded under any policy exclusion . . .

[n]evertheless, the court ruled Chicago Title did not have to reimburse Bristol Heights.'

Although *Rooker-Feldman* does not apply when a plaintiff raises a claim independent from

the one decided in the state court, "[j]ust presenting in federal court a legal theory not raised in state

court, however, cannot insulate a federal plaintiff's suit from *Rooker–Feldman* if the federal suit

nonetheless complains of injury from a state-court judgment and seeks to have that state-court

judgment reversed." *Hoblock*, 422 F.3d at 86. "[A] federal suit is not free from Rooker–Feldman's

bar simply because the suit proceeds on legal theories not addressed in state court; . . . a federal

plaintiff cannot escape the *Rooker–Feldman* bar simply by relying on a legal theory not raised in

state court." *Id*., at 87. The wording of Bristol Heights' Complaint suggests that it is seeking this

Court to overturn the findings of fact that Chicago Title's obligation under the Policy terminated

when Bristol Heights itself breach that contract; the plaintiff wants this Court to simply disregard

the State Court Judgment.  Although it is not a formal pleading, Bristol Heights has stated in the Form 26(f) Report of the Parties' Planning Meeting (document 16) that it intends to conduct discovery on "all claims decided in the prior state court action" (*id*., p. 6 § V.E.) and that it contests certain material findings of fact stated in the State Court Judgment (*id*., pp. 4-5 § IV, undisputed facts 19, 26, 35 & 36).

### E.  Bristol Heights' Negligence Claim is Inappropriate.

Under Connecticut law, the claim of negligence presented in Count One of the Complaint is not appropriate.[11]

> A title insurance policy is a contract of indemnity under which the insurer agrees to indemnify the insured in a specified amount against loss through defect of title to real estate. *See Cohen v. Security Title & Guaranty Co.,* 212 Conn. 436, 439, 562 A.2d 510 (1989). Accordingly, the relationship between an insurance company and the insured is essentially contractual. *See* 11 L. Russ & T. Segalla, Couch on Insurance (3d Ed. 1998) § 159:5; *Walker Rogge, Inc. v. Chelsea Title & Guaranty Co.,* 116 NJ 517, 540, 562 A.2d 208 (1989).

*Lee v. Duncan*, 88 Conn. App. 319, 325, 870 A.2d 1, 5-6 (2005). In 1935, the Connecticut Supreme Court considered when a plaintiff may bring a negligence claim based on a contractual obligation: "The question as to when and to what extent a recovery for negligence may be based upon the breach of a contract obligation is one of the most questions [*sic*] in the law." *Dean v. Hershowitz*, 119 Conn. 398, 400, 177 A. 262, 265 (1935). The court at the time held that it was "the fundamental nature of the obligation [that is] the test as to whether the action is founded upon either tort or contract." *Id*. (citation and quotation marks omitted)(noting the law imposes special duties when the contract establishes a physician-patient, attorney-client or bailor-bailee relationship, which duty is more

---

[11]  The inappropriateness of the negligence claim is not as determinative of whether Bristol Heights has any reasonable possibility of prevailing on the merits of the claims as are the application of claim and issue preclusion, statute of limitation and *Rooker-Feldman*, nevertheless it further demonstrates how Bristol Heights and Ms. Zimmerman are bringing the claims in the Complaint for an improper purpose.

fundamental than the contractual obligation). The court completed its general analysis with the admonition: "Care must also be taken not to enlarge the scope of the promisee's undertaking beyond that in his contract. *Rumberg v. Cutler*, 86 Conn. 8, 84 A. 107; Salmond, Torts, p. 10; American Law Institute Restatement, Torts, vol. 2, § 357." *Id*. 119 Conn. at 403, 177 A. at 267.

More recently, the Supreme Court has ruled in cases brought against insurers that when an action arises from a claim under an express or implied contract, a claim in tort is inappropriate. *Deming v. Nationwide Mut. Ins. Co.,* 279 Conn. 745, 772, 905 A.2d 623, 640 (2006); *see also Macomber v. Travelers Property & Cas. Corp.,* 261 Conn. 745, 651, 804 A.2d 180, 199 (2001). The gravamen of Bristol Heights' Complaint in this action is simply that Chicago Title had a contractual obligation to sue Mr. Volpicella for the breach of the warranty deed and that it did not do so. In the First Federal Court Action, Bristol Heights alleged that Chicago Title made affirmative decisions refusing to fulfill its obligations under the Policy, not that it negligently omitted fulfill some duty to bring suit against Mr. Volpicella. *See* Ex. B, ¶¶ 8, 9, 10, 12, 15, 16, 17, 19, 21 & 23.[12] The negligence claim is simply a pretext to present to this Court a legal theory that would be nominally distinct from claims it has already litigated and lost.

## II.  PLAINTIFF'S COUNSEL HAS VIOLATED 28 USC § 1927

Ms. Zimmerman has prepared and signed the pleadings in this action that are based on the same factual assertions already litigated and decided in the State Court Action. The Appellate Court for the Second Circuit has already ruled that Bristol Heights cannot present such claims again in a federal court. Ms. Zimmerman has opposed without any basis (and indeed made false representations

---

[12]  In that complaint, Bristol Heights alleged that "instead of suing Mr. Volpicella for breach of Warranty Deed, Chicago Title *chose* to sue their [*sic*] insured, Bristol Heights" (¶ 19, emphasis added); "Chicago Title *knew* that they [*sic*] did not intend to accept coverage. . . ." (¶ 23, emphasis added).

to this Court as to the privileged nature of the subpoenaed documents) the disclosure of the settlement documents between her client and Lewis Volpicella. She has vexatiously served subpoenas on Chicago Title's trial counsel. Such conduct of the plaintiff's counsel subjects her to sanctions under 28 USC § 1927 for unreasonably and vexatiously multiplying proceedings.[13]

### A. Under Section 1927, Sanctions Are Appropriate Where Plaintiff's Counsel Has Unreasonably and Vexatiously Multiplied Proceedings in Bad Faith.

Because this Court's inherent power to impose sanctions against an attorney is the same as that under section 1927, this Court must find that there was not a colorable basis for the claims made in the Complaint and that Ms. Zimmerman acted in bad faith. *Enmon v. Prospect Capital Corp.*, 675 F.3d 138, 143 (2d Cir. 2012). Although the explicit and comprehensive ruling of the Court of Appeals state that Bristol Heights cannot make any claims in federal court based upon the same factual assertions made in the State Court Action, this is exactly what plaintiff's counsel has in fact done by bringing this action for her clients. The Complaint signed by Ms Zimmerman presents the same facts and issues as presented in the pleadings in the First Federal Court Action. The Court of Appeals ruled that the factual assertions presented in the First Federal Court Action were the same as those in the State Court Action and that Bristol Heights is precluded from proceedings in federal court regarding those assertions. However, the Complaint in this action presents the same factual assertions as in the First Federal Court Action. When counsel for the plaintiff persists in alleging legally unfounded claims despite having ample opportunity to withdraw them, such conduct supports a decision to impose sanctions under section 1927. *Gollomp v. Spitzer*, 568 F.3d 355, 370-71 (2d Cir. 2009).

---

[13] **Counsel's liability for excessive costs.** Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

The same argument prevails in that claims in this action are barred by the applicable statutes of limitations. The allegations made in the Complaint set forth the date that the causes of action accrued. Ms. Zimmerman's effort to disguise the expiration of the statutes of limitation by alluding to an accrual date commencing upon the expiration of the statute regarding any claim that can now be made against Mr. Volpicella further support the lack of merit of the claims made in the Complaint and Ms. Zimmerman's bad faith. There is no legal basis for any theory that the negligence claim accrued on August 16, 2011. Ms. Zimmerman is, or certainly should be, familiar with the claims made in the complaint filed February 1, 2010 in the First Federal Court Action – eighteen months before August 16, 2011 – that Chicago Title had breached the Policy by failing to sue Mr. Volpicella. In the past, Bristol Heights has certainly considered the claim ripe well before 2011.

Most striking as to the vexatious nature of the Complaint is that since 2006 Mr. Volpicella has been agreeable to resolve the very claim that Bristol Heights now charges Chicago Title refused to litigate. In addition, Bristol Heights was always free to bring such a suit without Chicago Title.

**B.  Under Section 1927, Sanctions Against Plaintiff's Counsel is Award of Excess Costs, Expenses, and Attorneys' Fees Incurred Arising From Counsel's Conduct.**

This Court may require Ms. Zimmerman to satisfy personally Chicago Title's excess costs, expenses, and attorneys' fees reasonably incurred because of her conduct that unreasonably and vexatiously multiplied the proceedings in this case. Costs that can be awarded under section 1927 are those provided in 28 USC § 1920, including clerk's and marshal's fees, court reporter charges, printing and witness fees, copying costs, interpreting costs, and the fees of court-appointed experts. *Roadway Exp., Inc. v. Piper*, 447 US 752, 758, 100 S. Ct. 2455, 2460, 65 L. Ed. 2d 488 (1980). Courts in this District and Circuit have employed the traditional lodestar method for determining reasonable attorneys' fees under section 1927. *Sony Electronics, Inc. v. Soundview Technologies, Inc.*, 389 F. Supp.2d 443, 447 & n. 4 (D.Conn. 2005). Excess costs, expenses and attorneys' fees

have been incurred reviewing and responding to the Complaint and in preparing this Motion. Courts

here have ordered that the prevailing party submit a claim and supporting documents within a

reasonable period following the Court's decision on the underlying matter. *Id.* at 446.

## III. PLAINTIFF'S COUNSEL'S CONDUCT VIOLATES RULE 11

Because plaintiff's counsel has presented the Complaint for an improper purpose and has

made unwarranted claims she has violated Rule 11(b) of the Federal Rules of Civil Procedure and

is subject to sanctions under Rule 11(c).[14]

> The heart of Rule 11 is [the] sentence: [The signature of an attorney or party constitutes a
> certificate by the signer that the signer has read the pleading, motion, or other paper; that to
> the best of the signer's knowledge, information, and belief formed after reasonable inquiry
> it is well grounded in fact and is warranted by existing law or a good faith argument for the
> extension, modification, or reversal of existing law, and that it is not interposed for any
> improper purpose, such as to harass or to cause unnecessary delay or needless increase in the
> cost of litigation;] which explains in detail the message conveyed by the signing of a
> document. A signature certifies to the court that the signer has read the document, has
> conducted a reasonable inquiry into the facts and the law and is satisfied that the document
> is well grounded in both, and is acting without any improper motive.

*Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 US 533, 542, 111 S.Ct. 922, 929, 112

L.Ed. 2d 1140 (1991). "Rule 11 is aimed at curbing abuses of the judicial system. To this end, it sets

up a means by which litigants certify to the court, by signature, that any papers filed are well

---

[14]   **(b) Representations to the Court.**
By presenting to the court a pleading, written motion, or other paper – whether by signing, filing,
submitting, or later advocating it – an attorney or unrepresented party certifies that to the best of the
person's knowledge, information, and belief, formed after an inquiry reasonable under the
circumstances:
>     (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay,
>     or needlessly increase the cost of litigation; [and]
>     (2) the claims, defenses, and other legal contentions are warranted by existing law or by a
>     nonfrivolous argument for extending, modifying, or reversing existing law or for establishing
>     new law. . . .
**(c) Sanctions.**
(1) ***In General.*** If, after notice and a reasonable opportunity to respond, the court determines that
Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law
firm, or party that violated the rule or is responsible for the violation. . . .

founded." *Id.* (citation & internal quotation marks omitted). In determining whether Ms. Zimmerman violated Rule 11, this Court must focus not upon her subjective good faith belief, but upon whether her conduct was objectively reasonable under the circumstances. *Id.*, 498 US at 551, 111 S.Ct. at 933.

### A. Ms. Zimmerman Presented the Complaint For an Improper Purpose.

In this action, Bristol Heights claims that it has been damaged because no legal action was taken against Mr. Volpicella to enforce his warranty of title after the City made demand for payment of taxes that were secured by liens on the Property. However, no legal action was ever in fact necessary as Mr. Volpicella had acknowledged his liability under his warranty deed granted Bristol Heights and had offered to satisfy that liability. Bristol Heights never accepted Mr. Volpicella's offer. Mr. Volpicella owned (and presumably continues to own) a 25% membership interest in the plaintiff, Bristol Heights. Bristol Heights has always had a remedy readily at hand for the reimbursement of its tax lien payment to the City but has refused or neglected accept or complete the transaction that would accomplish it. Bristol Heights chose to remain idle rather resolve the claim itself without litigation. There is no apparent *proper* purpose to this litigation when Bristol Heights has always had there ultimate remedy available a simply accepting Mr. Volpicella's proposal.

### B. Bristol Heights Has Presented Unwarranted Claims in Complaint.

"It is [ ] clear that the central purpose of Rule 11 is to deter baseless filings in district court. . . ." *Bus. Guides*, 498 US at 552, 111 S.Ct. at 934 (citation & internal quotation marks omitted). The Complaint in this action is just such a baseless filing. In *Kahre-Richardes Family Found., Inc. v. Vill. of Baldwinsville, N.Y.,* the District Court awarded sanctions under Rule 11 where the plaintiff had been warned by the court that its claims were not likely to succeed by reason of the doctrine of *res judicata*, yet the plaintiff persisted. 953 F.Supp. 39 (NDNY 1997) *aff'd sub nom.,*

*Kahre-Richardes Family Found., Inc. v. Village of Baldwinsville*, 141 F.3d 1151 (2d Cir. 1998); *see also Cohen v. Bane*, 853 F. Supp. 620 (EDNY 1994)(plaintiffs' attorney could easily have determined the likely success by examining the case law and considering the fact that many of the claims were barred by res judicata).

In making this determination, the court must focus not upon the attorney's subjective good faith belief, but upon whether his or her conduct was objectively reasonable under the circumstances. *Bus. Guides*, 498 US at 551, 111 S.Ct. at 933. In cases "where it is clear that a party's attorney should have known that there was absolutely no possibility of prevailing on the merits given the precedent against the claims, sanctions are necessary to deter such counsel from wasting the time and resources of the adversaries as well as the court." *Cohen v. Bane,* 853 F.Supp. at 629 (citation omitted). Sanctions are therefore appropriate to deter Ms. Zimmerman's conduct in this action.

## C.  Under Rule 11, Sanctions Against Plaintiff's Counsel is What is Necessary to Deter Counsel's Misconduct

"Under Rule 11 sanctions *must* be awarded when a competent attorney could not have formed a belief after reasonable inquiry that the claims were 'warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law.' This objective inquiry does not require a finding of bad faith. *Eastway Constr. Corp. v. New York,* 762 F.2d 243, 254 (2d Cir.1985)." *Norris v. Grosvenor Mktg. Ltd.*, 803 F.2d 1281, 1288 (2d Cir. 1986)(time barred claim that was also subject to *res judicata* was frivolous with no chance of succeeding so sanctions warranted)(emphasis in original). Rule 11(b) provides in relevant part that monetary sanctions may be awarded against an attorney who submits papers to the Court containing claims, defenses, and other legal contentions that are not warranted by existing law or makes a frivolous argument for the extension, modification, or reversal of existing law. Fed.R.Civ.P. 11(b)(2). "Once a court determines that Rule 11(b) has been violated, it may in its discretion impose sanctions limited to what is

'sufficient to deter repetition of such conduct.' Fed.R.Civ.P. 11(c)(2); *see also* Fed.R.Civ.P. 11 advisory committee note to 1993 amendments. The court may impose, among other things, monetary sanctions. *Margo v. Weiss*, 213 F.3d 55, 64-65 (2d Cir. 2000). The defendant seeks an appropriate sanction whether monetary or otherwise such that will deter the further violation of Rule 11 by Ms. Zimmerman

## Conclusion

The Complaint in this action presents claims that cannot succeed for multiple legal reasons. Significantly, the Court of Appeals for the Second Circuit has already considered the same factual allegations found in the Complaint and informed the plaintiff (and therefore plaintiff's counsel) that it is barred by the doctrine of *res judicata* from further proceedings in federal court. However, Stacie Zimmerman, Esq. has signed and filed the Complaint in disregard of the higher court's ruling. Her conduct thereby subjects to her sanctions by this Court.

Dated February 5, 2013

CHICAGO TITLE INSURANCE COMPANY
/s/ Michael J. Leventhal
By:_____
Michael J. Leventhal (ct03119)
155 Post Road East, Suite 4
Westport, Connecticut 06880
(203) 579-5125 / facsimile: (203) 579-5127
email: levlaw@sbcglobal.net