UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BRISTOL HEIGHTS ASSOCIATES, LLC, | : | |
| Plaintiff, | : | CIVIL ACTION NO. 3:12-CV-1658 (JCH) |
| v. | : | |
| CHICAGO TITLE INSURANCE COMPANY, | : | June 14, 2013 |
| Defendant. | : | |

**RULING RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. No. 36)**

### I.   INTRODUCTION

This case is the fourth in a series of proceedings between the parties regarding the same underlying transaction and set of facts.  The dispute concerns liability under a title insurance policy for real property.  Plaintiff Bristol Heights Associates, LLC ("Bristol Heights") brought this action against defendant Chicago Title Insurance Company ("Chicago Title"), alleging negligence and breach of contract.  Chicago Title filed a Motion for Summary Judgment (Doc. No. 36) as to both claims.

For the reasons below, the court **grants** the Motion for Summary Judgment.

### II.  STANDARD OF REVIEW

A motion for summary judgment is properly granted only if "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." O'Hara v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, 642 F.3d 110, 116 (2d Cir. 2011).  Thus, the role of the district court in deciding a summary judgment motion "is to determine whether genuine issues of material fact exist for trial, not to make findings of fact."  Id.  In making this determination, the court must resolve all ambiguities and draw

1

all inferences in favor of the party against whom summary judgment is sought. See Garcia v. Hartford Police Dep't, 706 F.3d 120, 127 (2d Cir. 2013).

"The moving party bears the burden of establishing the absence of any genuine issue of material fact." Zalaski v. City of Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010). Once the moving party has satisfied that burden, to defeat the motion "the party opposing summary judgment . . . must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'" Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56(e)). "For summary judgment purposes, a 'genuine issue' exists where the evidence is such that a reasonable jury could decide in the non-moving party's favor." Cambridge Realty Co., LLC v. St. Paul Fire & Marine Ins. Co., 421 F. App'x 52, 53 (2d Cir. 2011); see also Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 104 (2d Cir. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)) (stating that the non-moving party must point to more than a mere "scintilla" of evidence in its favor). "[U]nsupported allegations do not create a material issue of fact." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000).

### III.  BACKGROUND

  A. Facts

The history of the parties' relationship is not in dispute. In 2003 Lewis Volpicella conveyed by warranty deed a parcel of real property (the "Property") located in the City of Bristol (the "City") to Bristol Heights, in which he also had a twenty-five percent membership interest. See Def.'s Local Rule ("L.R.") 56(a)(1) Stmt. (Doc. No. 36-1) at ¶ 16. In conjunction with the conveyance, Bristol Heights purchased a policy from Chicago Title (the "Policy") to insure title to the Property. Id. at ¶ 17. In August 2005

the City demanded that Bristol Heights pay tax assessments on the Property that dated from 1993 (before Volpicella's ownership) and for which the City never sent Volpicella a bill.  Id. at ¶¶ 12-13, 18.  The City had filed tax liens on the Property in 1995, but under the name of the previous owner, PB Real Estate, Inc.  Id. at ¶ 14.  Although Bristol Heights maintained during the fall of 2005 that Volpicella was responsible for the 1993 assessments, it did not demand payment under the warranty of title and instead negotiated directly with the City to resolve the matter without the participation of Chicago Title.  Id. at ¶¶ 20, 26.

In December 2005, Bristol Heights filed a claim under the Policy with Chicago Title after learning that the City was contemplating foreclosing on the tax liens.  Id. at ¶¶ 29-30.  The attorney assigned by Chicago Title to investigate the claim concluded that there were valid defenses to foreclosure.  Id. at ¶ 34.[1]  Nevertheless, in March 2006, Bristol Heights paid the City in full without informing Chicago Title or obtaining its consent.  Id. at ¶ 44.  Before the payment, Bristol Heights also refused to cooperate with Chicago Title's investigation into coverage of the claim or to comply with document requests.  Id. at ¶¶ 40-43.  Bristol Heights alleges that the requests were not authorized under the Policy but otherwise admits its failure to cooperate.  See Pl.'s L.R. 56(a)(2) Stmt. (Doc. No. 64-2) at ¶¶ 40-41.  At the time of the payment there was no threat of foreclosure.  See Def's L.R. 56(a)(1) Stmt. ¶ 39.  Rather, Bristol Heights paid the taxes in connection with refinancing the Property to continue work on the project.  Id.

---

[1] When Volpicella purchased the Property, it was a single parcel.  Formerly the Property had been subdivided into 147 lots.  See Def.'s L.R. 56(a)(1) Stmt. ¶ 10.  The City filed its tax liens individually against the 147 lots, even though the subdivision expired in March 1993 and the Property was at the time of filing a single parcel.  Id. at ¶¶ 11, 14.  In addition, the City did not apply Volpicella's later tax payments to the outstanding balance for the earlier year despite the statutory obligation to do so under Connecticut General Statutes § 12-144b.  Id. at ¶ 15.

3

B. Prior Litigation

Chicago Title's liability under the Policy has been the subject of three previous proceedings. The preclusive effect of that litigation is central to the present suit, as discussed in Part IV below. The history of the litigation, however, is not in question. Bristol Heights initiated arbitration in June 2006, but withdrew its claim in November 2006. Id. at ¶¶ 46-48. Chicago Title then brought suit in 2007 in Connecticut Superior Court, seeking a declaratory judgment regarding the company's obligations under the Policy and, in case of liability, indemnification from Volpicella. Id. at ¶¶ 1-2. Bristol Heights filed counterclaims against Chicago Title, including for breach of contract, as well as a cross-claim against Volpicella for breach of the warranty deed. Id. at ¶¶ 3-4. In October 2009, Bristol Heights surrendered its claim for breach of warranty when it executed a mutual release agreement with Volpicella. Id. at ¶ 5; see Pl.'s L.R. 56(a)(2) Stmt. ¶ 5.[2]

While the state suit was pending, Bristol Heights initiated a federal diversity action in this Court in 2010. Id. at ¶ 6. Judge Chatigny initially stayed and ultimately dismissed the federal suit under the Colorado River abstention doctrine. Id. at ¶ 8. Judge Chatigny's dismissal of the federal action was based on: (1) the reactive nature of the federal suit, which was filed in response to an adverse summary judgment ruling

---

[2] Bristol Heights denies Chicago Title's statement that the mutual release agreement with Volpicella released him from "the claim for breach of the warranty deed." Def.'s L.R. 56(a)(1) Stmt. ¶ 5 (emphasis added); see Pl.'s L.R. 56(a)(2) Stmt. ¶ 5. There is no factual dispute, however, that the mutual release agreement precluded Bristol Heights from asserting its claim for breach of the warranty deed absent some breach of the agreement by Volpicella. Chicago Title does not deny that, under an addendum to the mutual release agreement, Volpicella stipulated that he would not raise the agreement as a defense against a subrogation claim by Chicago Title. Chicago Title's position is only that it never had a subrogation claim because it was never required to indemnify Bristol Heights under the policy.

The absence of payment to an insured distinguishes the facts of this case from those in Welch Foods, Inc. v. Chicago Title Ins. Co., 341 Ark. 515 (2000), where Chicago Title had paid the insured on a claim and brought a warranty action as a subrogee.

4

in the state court; (2) the advanced stage of the state litigation, which had proceeded to trial; and (3) the lack of evidence that state procedures were inadequate to protect Bristol Heights' interests in the legal claims presented to the federal forum.  See Bristol Heights Assocs., LLC v. Chicago Title Ins. Co., No. 3:10-CV-154 RNC, 2011 WL 3930299, at *3 (D. Conn. Mar. 30, 2011).

    In August 2011, after a trial in the Connecticut Superior Court, Judge Shaban entered final judgment in the state suit.  See Chicago Title Ins. Co. v. Bristol Heights Assocs., LLC, No. X02UWYCV074020477S, 2011 WL 4031565 (Conn. Super. Ct. Aug. 18, 2011).  Judge Shaban held that Bristol Heights' payment of the tax assessment without Chicago Title's consent—coupled with Bristol Heights' refusal to cooperate with Chicago Title's coverage investigation—breached the terms of the Policy and "terminated [Chicago Title's] obligations under it."  Id. at *10.  Judge Shaban likewise rejected Bristol Heights' counterclaim for breach of contract, given that Chicago Title was under no immediate duty to defend title to the Property in the absence of a tax foreclosure action or imminent threat of such an action.  Id. at *12.  Because Judge Shaban found Chicago Title "not liable for any loss or damage suffered by [Bristol Heights] through its payment of the tax liens," id. at *11, he did not reach the question of indemnification by Volicella, id. at *12.

    Bristol Heights appealed both Judge Chatigny's dismissal of its federal suit and Judge Shaban's adverse judgment in the state suit brought by Chicago Title.  The Second Circuit dismissed the interlocutory appeal as moot in light of the final judgment in the parallel state suit.  See Bristol Heights Assocs., LLC v. Chicago Title Ins. Co., No. 11-1115-CV (2d Cir. Dec. 27, 2011).  The Appellate Court of Connecticut has also

since affirmed the state trial court's judgment.  See Chicago Title Ins. Co. v. Bristol Heights Assocs., LLC, 142 Conn. App. 390 (2013).[3]  The Appellate Court held, inter alia, that Chicago Title's requests for documents and testimony from Bristol Heights to investigate coverage of the claim were reasonable; that the Policy required Bristol Heights to cooperate with these requests; and that Judge Shaban did not err in finding that Bristol Heights' failure to cooperate prejudiced Chicago Title.  Id. at 399-410.

    C.  Disputed Issues of Material Fact

Bristol Heights' statement of facts does not substantially dispute the history of the parties or the prior litigation.[4]  Bristol Heights does deny certain facts while admitting that those facts were found by the state trial court.  See, e.g., Pl.'s L.R. 56(a)(2) Stmt. ¶¶ 28, 36, 49.  None of Bristol Heights' denials implicate the court's recital of the parties' history above.  Moreover, Bristol Heights' Local Rule 56(a)(2) statement is defective in two regards.  First, none of the denials cite to specific evidence, as required.  See D. Conn. L. Civ. R. 56(a)(3).  Second, Bristol Heights failed to provide the court a separate section entitled "Disputed Issues of Material Fact."  See D. Conn. L. Civ. R. 56(a)(2).  Consequently, the court is left to conduct its own search of the parties' statements for facts asserted by Bristol Heights that are genuinely in dispute, are material to the disposition of the case, and rise above the level of "unsupported allegations."  Weinstock, 224 F.3d at 41.

Bristol Heights offers what it calls a "Counterstatement of Facts."  See Pl.'s 56(a)(2) at 6-9 ("Counterstatement").  In that counterstatement, Bristol Heights

---

[3] Bristol Heights has recently filed a petition for certification to the Supreme Court of Connecticut. See Petition No. SC120424, Chicago Title Ins. Co. v. Bristol Heights Assocs., LLC (May 28, 2013).

[4] The court notes that both parties' Local Rule 56(a) statements were submitted prior to—and thus do not mention—the ruling by the Appellate Court of Connecticut on May 7, 2013.

principally alleges that subsequent to the mutual release agreement with Volpicella, Volpicella's attorney "actively assisted" Chicago Title during the state court trial. Id. at ¶ 3.[5]  The purpose of the mutual release agreement, it is claimed, was to prevent Volpicella from interfering in the litigation. Id. at ¶ 1.[6]  The court need not address whether these allegations are sufficiently supported either by affidavits of witnesses competent to testify at trial or by otherwise admissible evidence. See D. Conn. L. Civ. R. 56(a)(3).  The facts that Bristol Heights seeks to put in question bear only on whether Volpicella could be sued for breaching the mutual release agreement.  They do not bear on whether Chicago Title had a duty to sue.  Nor does Bristol Heights allege that the new facts undercut the fairness and fullness of the prior state proceedings.  The court thus concludes that no material issues of fact remain that would prevent it from rendering summary judgment in this case.

## IV.  DISCUSSION

In the prior litigation between the parties, Bristol Heights asserted claims that substantially overlap with the present lawsuit.  In the declaratory action brought by Chicago Title, Bristol Heights filed a three-count counterclaim alleging breach of contract, breach of the covenant of good faith and fair dealing, and violation of the Connecticut Unfair Trade Practices Act ("CUTPA"). See Chicago Title Ins. Co. v. Bristol Heights Assocs., LLC, No. No. X02UWYCV074020477S, 2011 WL 4031565, at *1

---

[5] Bristol Heights cites to an affidavit from a minority owner of Bristol Heights and, "[m]ost significantly," to an objection by Volpicella's attorney during the deposition testimony of Chicago Title's claims attorney. See Counterstatement at ¶¶ 3, 5.

[6] Bristol Heights cites to an email exchange between the attorneys who negotiated the mutual release agreement for Bristol Heights and Volpicella. See Counterstatement at ¶ 1.  Bristol Heights argues, "This parol evidence as to the purpose for the releases creates a material issue of fact as to whether the release agreement was breached by [Volpicella's attorney]." See Pl.'s Opp'n to Def's Summ. J. Mot. ("Pl.'s Opp'n") (Doc. No. 64) at 4.

(Conn. Super. Ct. Aug. 18, 2011). Bristol Heights alleged those same three claims as well as misrepresentation in its first federal suit before Judge Chatigny. See Bristol Heights Assocs., LLC v. Chicago Title Ins. Co., No. 3:10-CV-154 RNC, 2011 WL 3930299, at *1 (D. Conn. Mar. 30, 2011). Bristol Heights asserts claims here of negligence and breach of contract. The difference in the present action is that the claims pertain not to Chicago Title's contractual duty to indemnify Bristol Heights for the tax payment but, rather, to Chicago Title's failure to sue Volpicella to recoup the lost payment. As will be discussed shortly, Bristol Heights' present claims share a common factual and legal nexus with its previous claims. Granting the remedy sought by Bristol Heights would necessarily contradict judgments in the parties' earlier state and federal suits. It is precisely this outcome—so detrimental to the rule of law—that the doctrines of preclusion and res judicata are meant to prevent.

Chicago Title marshals five arguments in support of its Motion for Summary Judgment. First, the mutual release agreement between Bristol Heights and Volpicella barred suit in Bristol Heights' name, and Chicago Title never acquired subrogation rights to sue in its own name because it was never obligated to pay Bristol Heights under the Policy. See Def.'s Mem. of Law in Supp. of Mot. for Summ. J. ("Def.'s Mem.") (Doc. No. 36-2) at 9-14. Second, the claims and issues raised by Bristol Heights are precluded by the prior state and federal judgments. Id. at 14-30. Third, the present claims are barred by Connecticut's three-year and six-year statutes of limitations for negligence and breach of contract, respectively. Id. at 30-33. Fourth, Bristol Heights is not entitled to damages that it failed to mitigate when it released its warranty claim against Volpicella. Id. at 33. Fifth, and finally, the tort of negligence is inappropriate in the context of

insurance. Id. at 33-35. Finding the second argument—preclusion—sufficient to decide the case, the court does not reach the other arguments presented.

### A. Preclusion Doctrine

"The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'" Taylor v. Sturgell, 553 U.S. 880, 892 (2008) (footnote omitted). As the Supreme Court has explained,

> Under the doctrine of claim preclusion, a final judgment forecloses "successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." Issue preclusion, in contrast, bars "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment," even if the issue recurs in the context of a different claim.

Id. at 892 (quoting New Hampshire v. Maine, 532 U.S. 742, 748-49 (2001)). The purpose of the two doctrines is to conserve scarce judicial resources and to promote parties' reliance on judgments by "minimizing inconsistent decisions." Id. at 892 (quoting Montana v. United States, 440 U.S. 147, 153–154 (1979)).

To determine the preclusive effect of a prior state judgment a federal court sitting in diversity applies the law of preclusion of the rendering state. See 28 U.S.C. § 1738 ("[J]udicial proceedings 'shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken.'"); Marrese v. Am. Acad. of Orthopaedic Surgeons, 470 U.S. 373, 380 (1985). Under Connecticut law,

> [t]he doctrine of res judicata holds that an existing final judgment rendered upon the merits without fraud or collusion, by a court of competent jurisdiction, is conclusive of causes of action and of facts or issues thereby litigated as to the parties and their privies in all other actions in the same or any other judicial tribunal of concurrent jurisdiction.

9

Wade's Dairy, Inc. v. Town of Fairfield, 181 Conn. 556, 559 (1980).  The Connecticut Supreme Court has treated claim and issue preclusion as "related ideas on a continuum," which "express no more than the fundamental principle that once a matter has been fully and fairly litigated, and finally decided, it comes to rest . . . ." LaSalla v. Doctor's Associates, Inc., 278 Conn. 578, 590 (2006) (citation omitted).  The applicability of preclusion doctrines to a given case is a matter of law to be decided by the court.  See DaCruz v. State Farm Fire & Cas. Co., 268 Conn. 675, 686 (2004).

    B.  Preclusive Effect of the Prior Litigation

Before examining the preclusive effect of the prior state adjudication, the court notes a closely connected hurdle to the present litigation—namely, that the Second Circuit has already ruled on preclusion.  See Bristol Heights Assocs., LLC v. Chicago Title Ins. Co., No. 11-1115-CV (2d Cir. Dec. 27, 2011).  In its Summary Order dismissing Bristol Heights' appeal of Judge Chatigny's decision, the Second Circuit explained that entry of the state court's final judgment "precludes further proceedings in federal court based on the same factual assertions." Id.  The Second Circuit ruling is itself entitled to respect as res judicata. Martinez v. Miller, 330 F. App'x 296, 297 (2d Cir. 2009) (noting that although summary orders do not have precedential value, they are binding "to the extent they establish the law of the case, res judicata, or collateral estoppel").  A side-by-side comparison of the instant complaint with the complaint from the earlier federal suit before Judge Chatigny reveals that, while Bristol Heights has shifted legal terrain in the wake of the state court's adverse final judgment, the core transaction and facts remain the same. Compare Compl. at ¶¶ 1-5, Bristol Heights Assocs., LLC v. Chicago Title Ins. Co. (No. 12-CV-1658) (reciting the history of the tax

liens and Bristol Heights' payment), with Compl. at ¶¶ 1-13, Bristol Heights Assocs., LLC v. Chicago Title Ins. Co. (No. 10-CV-154) (same).  The Second Circuit has unambiguously directed federal courts not to adjudicate these same facts between these same parties.

To survive this initial hurdle Bristol Heights must assert new facts.  As remarked above, on the court's inspection of the Local Rule 56(a) statements, the new facts asserted relate exclusively to Volpicella's breach of the mutual release agreement.  Even assuming arguendo that Bristol Heights could prove these facts at trial, it will have shown only that Volpicella was amenable to suit under the warranty.[7]  Bristol Heights would still need to provide a plausible legal argument that Chicago Title had a duty to sue which was not adjudicated in the prior litigation.  Bristol Heights provides no clear source of such a duty.  Bristol Heights' memorandum opposing summary judgment implicitly posits two different theories, each of which is unavailing in the present suit.

1. Bristol Heights' Out-of-Pocket Argument

Bristol Heights first urges a reading of the state trial court's judgment that would restrict the preclusive scope of that judgment to the duty to reimburse "out of pocket." See Pl.'s Mem. Opp'n Summ. J. at 1, 3, 9-10.  That reading, however, strains both the language and logic of the state court's judgment.  Not only did Judge Shaban find

---

[7] Both parties concede that the breach of warranty action against Volpicella accrued in August 2005 when the City notified Bristol Heights of the tax liens and that, under the applicable statute of limitations, it expired in August 2011. See Conn. Gen. Stat. § 52-576; Pl's Opp'n at 19; Def.'s Mem. at 30-32.  The parties dispute, however, whether Bristol Heights' present claims also accrued in August 2005 or August 2011 (when neither could sue Volpicella).  While the court declines to reach the statute of limitations issue, the argument raised by Bristol Heights to avoid being time-barred—the argument that Bristol Heights suffered a cognizable injury in August 2011 distinct from the prior injury suffered by paying the tax liens—merits brief consideration.  The later injury alleged by Bristol Heights from Chicago Title's failure to bring a warranty action depends, at a minimum, on Chicago Title's continuing obligation to remedy the initial injury from the tax payment.  In consequence, the court concludes that there can be no recognition of a distinct injury in August 2011 that would not first require the court to revisit the effect of the prior state judgment on the persistence of any such obligation.

11

Chicago Title "not liable" for any loss from the tax payment. Chicago Title Ins., 2011 WL 4031565 at *11 (emphasis added). He also declined to reach whether Volpicella was required to indemnify Chicago Title on the basis that Chicago Title had no liability to Bristol Heights under the Policy. Id. at *12. Bristol Heights' reading of the judgment leads to the perplexing result that an insurer released of its obligation to indemnify the insured would retain a separate obligation to sue third parties on the insured's behalf. Bristol Heights' reading is more perplexing still where, as here, the state court found no need to address Chicago Title's own claim for indemnification by the third party. In effect, Bristol Heights is suing Chicago Title for failing to litigate a claim that Bristol Heights either could not bring or chose not to bring itself.[8]

The court finds the natural reading here to be the correct one. The court thus takes the state trial court's judgment to mean what it plainly says: Chicago Title is "not liable for any loss or damage suffered by [Bristol Heights] through its payment of the tax liens." See Chicago Title Ins., 2011 WL 4031565 at *11. By its own account, Bristol Heights was not required to specify in the prior litigation how Chicago Title should cover the disputed liability under the Policy. See Pl.'s Opp'n at 8. Bristol Heights misreads the legal means available to the insurer, however, as distinct duties owed to the insured even in the absence of liability. In the state proceedings, Bristol Heights alleged—and Judge Shaban addressed—various grounds for Bristol Heights' breach of contract

---

[8] If, as Bristol Heights alleges, Volpicella breached the mutual release agreement, the question is why Bristol Heights did not litigate that claim against him and chose instead to relitigate its claim against Chicago Title. The rather unsatisfying answer given by Bristol Heights in its Memorandum is that it had no obligation to sue Volpicella and purchased title insurance precisely to avoid litigating that claim. See Pl.'s Opp'n at 24-26. That answer is strange indeed, given the history of litigation to date and Bristol Heights' own cross-claims against Volpicella in the state litigation as well as the resolution of those claims via the mutual release agreement. The more plausible explanation seems to be that Bristol Heights, in which Volpicella has a substantial membership interest, would prefer to risk no recovery to recovering directly from Volpicella. That is, of course, entirely Bristol Heights' choice.

12

counterclaim, including Chicago Title's "not defending the City's claim for taxes" and "failing to pay or settle the claim." Chicago Title Ins., 2011 WL 4031565 at *12. In the first federal complaint, Bristol Heights similarly based its breach of contract claim on multiple grounds, including Chicago Title's failure to sue the City for a refund or Volpicella for breach of the warranty deed. See Compl. at ¶ 18, Bristol Heights Assocs., LLC v. Chicago Title Ins. Co. (No. 10-CV-154). Each of the prior tribunals had before it, then, the larger claim by Bristol Heights that Chicago Title's contractual duty under the Policy encompassed a range of legal actions apart from reimbursement. In each instance, Bristol Heights also had the option to seek injunctive rather than monetary relief for its breach of contract claim.

While the present negligence and breach of contract claims focus on Chicago Title's failure to take only one course of action, the court holds those claims to be precluded by the state trial court's judgment declaring Chicago Title not liable and denying Bristol Heights' counterclaim. The point of claim preclusion is to prevent parties from reasserting "the same claim regardless of what additional or different evidence or legal theories might be advanced in support of it." Mulero v. Bd. of Educ. of City of Bridgeport, 142 Conn. App. 808, 810 (2013). It is true, as Bristol Heights points out, that Connecticut is a permissive-counterclaim state. See Pl.'s Mem. Opp'n Summ. J. at 10 (citing Conn. Practice Book § 10-10; Hansted v. Safeco Ins. Co. of Am., 19 Conn. App. 515, 521 n.4 (1989); Promotion Fulfillment v. Foster, Morgan & Clark, Inc., No. CV 960153022S, 1997 WL 261015 at *1 (Conn. Super. Ct. May 13, 1997); Battista v. DeNegris, No. CV93-0525774, 1994 WL 530165 at *1 (Conn. Super. Ct. Sept. 16, 1994)). That fact, however, does not bear on the present suit. The cases cited by

13

Bristol Heights pertain to a plaintiff asserting claims not previously brought as counterclaims in the action in which that plaintiff was a defendant.  Connecticut courts have indeed found those who defended an action without asserting counterclaims within their rights to bring subsequent claims as plaintiffs that derive from the same facts.  See In re Devlin, No. 06-30195 ASD, 2010 WL 122850 (Bankr. D. Conn. Jan. 5, 2010) ("In a so-called 'permissive' counterclaim state such as Connecticut, res judicata does not preclude a plaintiff who did not assert counterclaims as a defendant in an initial action from commencing a subsequent action arising from the same facts against the original plaintiff . . . .").  Those cases are not the instant one, however, because Bristol Heights affirmatively presented counterclaims to the prior tribunal.

The Supreme Court of Connecticut has treated plaintiffs like Bristol Heights—who asserted counterclaims as defendants in declaratory actions—as already having been plaintiffs with respect to those counterclaims.  See Lighthouse Landings, Inc. v. Connecticut Light & Power Co., 300 Conn. 325, 353 (2011) ("[T]he trial court's judgment for Lighthouse on the issues in the counterclaim has a preclusive effect on its misrepresentation and CUTPA claims in the civil action because the six special defenses and the claims in the civil action are based on the same factual allegations."). Under Connecticut law, res judicata encompasses the entire cause of action and transaction underlying the claim regardless of the relief sought.  See Wade's Dairy, Inc. v. Town of Fairfield, 181 Conn. 556, 560 (1980) ("A cause of action is that single group of facts which is claimed to have brought about an unlawful injury to the plaintiff and which entitles the plaintiff to relief. Even though a single group of facts may give rise to rights for several different kinds of relief, it is still a single cause of action.").  In the prior

state action, Bristol Heights could have sought—in lieu of or in addition to a damages claim—to enjoin Chicago Title to bring a refund or warranty action.  That different remedies were available on the same counterclaim does not leave Bristol Heights free under Connecticut law to parse and relitigate the claim in terms of every remedial variation.  See id.  Bristol Heights' prior claims for breach of contract, breach of the covenant of good faith and fair dealing, misrepresentation, and CUTPA violations derive from the same set of facts as Bristol Heights' present claims for negligence and breach of contract.  Claim preclusion alone bars reopening proceedings to resolve the same dispute.

The out-of-pocket argument, however, falters on several alternative preclusion grounds as well.  Issue preclusion prevents the court from reconsidering liability under the Policy because that issue was necessarily decided by the state trial court.  Whether the court defines the claims here broadly or narrowly, as a single cause of action or several distinct claims, a damages award would, in effect, create the very liability for the tax payment that the state trial court held not to exist.  See Chicago Title Ins., 2011 WL 4031565 at *11.  Even if the court's preclusion analysis departs in some particular from Connecticut law, the Second Circuit's Summary Order closes federal courts to Bristol Heights for claims that rest "on the same factual assertions" as those decided by the state trial court.  Clearly, this case and the initial federal action do so rest.  The court thus finds no route to the sought recovery that does not run afoul of preclusion.

        2.     Bristol Heights' Legal Malpractice Analogy

Bristol Heights alternatively urges a novel theory of the title insurer as fiduciary. The failure to pursue a viable legal claim, it is argued, is analogous to legal malpractice.

See Pl.'s Opp'n at 27-28.  Unsurprisingly, Bristol Heights cites no authority for that proposition.  Certainly, under Connecticut law, an insurer defending its insured against a third-party claim incurs a duty to exercise the requisite level of care and diligence in litigating.  See Hutchinson v. Farm Family Casualty Ins. Co., 273 Conn. 33, 47 (2005).  But where the insurer and insured are adversaries in a lawsuit, as they are in this and the preceding litigation, "there is no such fiduciary relationship."  Id.  Just as Bristol Heights is precluded from rewriting the law of the case to suit its present litigation strategy, so too it is barred from relitigating a settled dispute on a legal theory of insurance that has no foundation in the law.

**V.     CONCLUSION**

For the reasons above, defendant's Motion for Summary Judgment (Doc. No. 36) is **GRANTED.**

**SO ORDERED.**

Dated at New Haven, Connecticut this 14th day of June, 2013.

                                                /s/ Janet C. Hall
                                                Janet C. Hall
                                                United States District Judge