UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BRISTOL HEIGHTS ASSOCIATES, LLC, | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | 3:12-CV-1658 (JCH) |
| v. | : | |
| | : | |
| CHICAGO TITLE INSURANCE COMPANY, | : | September 19, 2013 |
| Defendant. | : | |

**RULING RE: DEFENDANT'S MOTION FOR SANCTIONS (Doc. No. 38) AND DEFENDANT'S MOTION FOR ATTORNEY'S FEES (Doc. No. 81)**

Plaintiff Bristol Heights Associates, LLC ("Bristol Heights") brought this action for negligence and breach of contract against Chicago Title Insurance Company ("Chicago Title"). On February 27, 2013, defendant filed this Motion for Sanctions (Doc. No. 38) against plaintiff's counsel, Stacie Zimmerman, Esq., alleging that her filing of the Complaint (Doc. No. 1) in this case was for an improper purpose and based on pleadings unsupported by existing law. On July 15, 2013, defendant filed a Motion for Attorney's Fees (Doc. No. 81) to be considered by the court in conjunction with the Motion for Sanctions.

On September 17, 2013, the court held a hearing on the Motions. For the reasons set forth below, the court **grants in part and denies in part** defendant's Motion for Sanctions and defendant's Motion for Attorney's Fees.

**I.    BACKGROUND**

This case is the fourth in a series of proceedings in state and federal court between the parties regarding the same underlying transaction and set of facts. On June 14, 2013, the court granted Chicago Title's Motion for Summary Judgment,

1

holding that this federal suit was clearly precluded by the parties' prior litigation.  See Ruling Re: Def.'s Mot. for Summ. J. ("Summ. J. Ruling") (Doc. No. 76).  The undisputed facts of the parties' relationship and the history of the prior litigation are detailed at greater length in that Summary Judgment Ruling.  See id. at 2-6.  A succinct account will suffice for present purposes.

The dispute between the parties concerns Chicago Title's liability under a title insurance policy for payments made by Bristol Heights to the City of Bristol to satisfy tax liens on the property covered by the policy.  At the time that Bristol Heights instituted the present action, there were already three judicial decisions regarding this dispute:  (1) a final judgment in the Connecticut Superior Court; (2) a dismissal of a first federal suit in this court; and (3) a summary order from the Second Circuit.  Chicago Title brought the state court action in 2007, seeking a declaratory judgment regarding the company's obligations under its policy with Bristol Heights and, in case of liability, indemnification from Lew Volpicella, the prior owner of the property.  See Chicago Title Ins. Co. v. Bristol Heights Assocs., LLC, No. X02UWYCV074020477S, 2011 WL 4031565, at *1 (Conn. Super. Ct. Aug. 18, 2011).  While the state case was pending, Bristol Heights filed a first action in this court, which Judge Chatigny dismissed on Colorado River abstention grounds.  See Bristol Heights Assocs., LLC v. Chicago Title Ins. Co., No. 3:10-CV-154 RNC, 2011 WL 3930299, at *3 (D. Conn. Mar. 30, 2011).  Subsequently, final judgment was entered in the state suit.  In the state court judgment, Judge Shaban held, inter alia, that Chicago Title was "not liable for any loss or damage" incurred by Bristol Heights in making the tax payment.  Chicago Title Ins. Co., 2011 WL 4031565, at *10.  The Second Circuit then dismissed Bristol Height's interlocutory appeal from

Judge Chatigny's ruling as moot in light of the entry of the state court judgment, which "precludes further proceedings in federal court based on the same factual assertions." Bristol Heights Assocs., LLC v. Chicago Title Ins. Co., No. 11-1115-CV (2d Cir. Dec. 27, 2011).[1]

Attorney Zimmerman filed Bristol Heights' second federal action in this court on November 21, 2012. While Attorney Zimmerman was not herself involved in the prior litigation between the parties, in bringing the present case she consulted with Bristol Heights' counsel in the prior litigation. See Def.'s Mem. of Law in Supp. of Mot. for Sanctions ("Def.'s Mem.") (Doc. No. 38-1) at 11; Pl.'s Mem. in Opp'n to Def's Mot. for Sanctions ("Pl.'s Opp'n") (Doc. No. 40) at 7 & n.4. Chicago Title served its Motion for Sanctions on Attorney Zimmerman on February 5, 2013. See Pl.'s Opp'n at 1; Def.'s Mot. for Sanctions (Doc. No. 38) at 1. In accordance with the 21-day safe harbor provision of Rule 11, see Fed. R. Civ. P. 11(c)(2), Chicago Title waited to file the Motion for Sanctions with the court until February 27, 2013, see Def.'s Mot. for Sanctions (Doc. No. 38), one day after filing its Motion for Summary Judgment, see Def.'s Mot. for Summ. J. (Doc. No. 36); Def.'s Resp. to Order to Show Cause (Doc. No. 79) at 1-2.

## II.     DISCUSSION

Chicago Title moves the court to sanction Attorney Zimmerman under both Rule 11 and section 1927 of Title 28 of the United States Code. See Def.'s Mot. for Sanctions (Doc. No. 38). Different standards attend the imposition of sanctions under these two provisions. Because the filing of the Complaint in this case violated Rule 11,

---

[1] On May 7, 2013, the Appellate Court of Connecticut affirmed Judge Shaban's Memorandum of Decision in the state court case. See Chicago Title Ins. Co. v. Bristol Heights Associates, LLC, 142 Conn. App. 390 (2013). On June 20, 2013, the Supreme Court of Connecticut denied certification for appeal. See Chicago Title Ins. Co. v. Bristol Heights Associates, LLC, 309 Conn. 909 (2013).

the court determines that imposing a limited monetary sanction on Attorney Zimmerman is appropriate to deter future Rule 11 violations. The court does not have sufficient evidence before it, however, to determine that Attorney Zimmerman acted in bad faith. Hence, the court declines to require that she pay—beyond the Rule 11 sanction—the reasonable costs of litigation, including attorney's fees, pursuant to either section 1927 or the court's inherent authority to impose sanctions.

    A.  <u>Rule 11</u>

Rule 11 provides, in relevant part, that in presenting a pleading to the court an attorney certifies that: (1) the pleading is not "for any improper purpose," Fed. R. Civ. P. 11(b)(1); and (2) the claims made are "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law," Fed. R. Civ. P. 11(b)(2). If the court determines that either (b)(1) or (b)(2) has been violated, the court may impose, <u>inter alia</u>, a monetary sanction sufficient to deter repetition of such conduct. <u>See</u> Fed. R. Civ. P. 11(c); <u>Simon DeBartolo Grp., L.P. v. Richard E. Jacobs Grp., Inc.</u>, 186 F.3d 157, 166 (2d Cir. 1999). Where the court determines that a pleading was filed for an improper purpose in violation of (b)(1), the court may impose the sanction on the party itself as well as counsel. Only the attorney of a represented party (and not the party) may be sanctioned for filing claims unwarranted by existing law in violation of (b)(2). <u>See</u> Fed. R. Civ. P. 11(c)(5). In its Motion for Sanctions, Chicago Title argues that Attorney Zimmerman should be sanctioned for filing the instant Complaint on both (b)(1) and (b)(2) grounds. <u>See</u> Def.'s Mem. at 1, 14. The court addresses the two grounds in reverse order.

1.     Unwarranted Claims

Rule 11 imposes "an affirmative duty [on the filer] to conduct a reasonable inquiry into the facts and the law before filing." Bus. Guides, Inc. v. Chromatic Commc'ns Enterprises, Inc., 498 U.S. 533, 551 (1991).  An attorney who presents frivolous claims in a pleading may consequently be subject to a monetary sanction.  See Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd., 682 F.3d 170, 177 (2d Cir. 2012).  In determining whether such a sanction is appropriate for baseless filings, courts apply an "objective unreasonableness" standard, which does not depend "on the subjective beliefs of the person making the statement."  Id. (citation and internal quotation marks omitted); see also Bus. Guides, 498 U.S. at 551 ("[T]he applicable standard is one of reasonableness under the circumstances.").  As distinct from an argument that is a long shot, a legal argument that is sanctionable as frivolous is one that has "no chance of success" and for which "there is no reasonable argument to extend, modify, or reverse the law as it stands."  Fishoff v. Coty Inc., 634 F.3d 647, 655 (2d Cir. 2011) (citation and internal quotation marks omitted).

Given the prior litigation between the parties, Bristol Heights' Complaint in this case presented claims that were not merely uncertain or tenuous, but objectively unreasonable under the circumstances.  Bristol Heights brought the instant action after there were no less than three adverse judicial decisions regarding the same dispute.  In addition to the final state court judgment holding Chicago Title not liable for any loss or damage due to Bristol Heights' tax payments, there was the Summary Order from the Second Circuit closing federal courts to future actions between the parties regarding the

same factual assertions.[2]  Hence, even without a closer analysis of the res judicata effect of the state court judgment, the Summary Order of the Second Circuit clearly decided the issue of preclusion and left no room for the present Complaint, which derives from the same transaction and facts as those alleged in the first federal action. Compare Compl. at ¶¶ 1-5, Bristol Heights Assocs., LLC v. Chicago Title Ins. Co. (No. 12-CV-1658) (reciting the history of the tax liens and Bristol Heights' payment), with Compl. at ¶¶ 1-13, Bristol Heights Assocs., LLC v. Chicago Title Ins. Co. (No. 10-CV-154) (same).

Based on the state court judgment alone, however, the claims presented in Bristol Heights' Complaint were clearly frivolous.  In both the state action and the first federal action, Bristol Heights alleged breach of contract.  In the present litigation, Bristol Heights added a negligence claim to the breach of contract claim, both claims resting on Chicago Title's failure to sue the prior owner of the property, Volpicella.  The only new basis for suit asserted is that the statute of limitations for a warranty action against Volpicella expired in August 2011.  See Compl. (Doc. No. 1) at ¶ 9.  However, in the state case, which Chicago Title brought as a declaratory action, Bristol Heights counterclaimed for breach of contract based on Chicago Title's failure to take a variety of actions—including defending, paying, or settling the claim for delinquent taxes on the property or, after payments were already made, bringing a refund action against the City of Bristol.  See Chicago Title Ins., 2011 WL 4031565, at *12.  Bristol Heights could as easily have based its counterclaim for breach of contract in the state suit on Chicago

---

[2] "[T]he Connecticut Superior Court's August 18, 2011 final judgment in the parallel state court action precludes further proceedings in federal court based on the same factual assertions." Bristol Heights Assocs., LLC v. Chicago Title Ins. Co., No. 11–1115–CV (2d Cir. Dec. 27, 2011) (citations omitted).

Title's failure to bring a warranty action against Volpicella.  That Bristol Heights declined to include that additional basis in the state suit did not leave the claim for breach of contract intact to be relitigated on every possible theory.  On even the most rudimentary understanding, res judicata is designed precisely to prevent this sort of endless relitigation of adjudicated claims.

After a trial in the state matter, Judge Shaban ruled, <u>inter alia</u>, that: (1) Bristol Heights made the tax payments "voluntarily through its own affirmative act and without the impetus of a pending loss of title," as well as without Chicago Title's prior consent; (2) Bristol Heights' actions breached the terms of the title insurance policy and "terminated [Chicago Title's] obligations under it"; (3) Chicago Title was "not liable for any loss or damage suffered by" Bristol Heights through its tax payments; and (4) the tax payments were excluded from coverage under the policy.  <u>Id.</u> at *9-*10.  Bristol Heights' Complaint in the instant case, therefore, patently lacks any legal basis.  Regardless of whether Chicago Title <u>could</u> have sued Volpicella,[3] it had no <u>duty</u> to its insured to do so because, pursuant to the state court judgment, it had no obligation to

---

[3] Bristol Heights settled its breach of warranty claim with Volpicella during the state court action.  In support of both its Motion for Summary Judgment and its Motion for Sanctions, Chicago Title argued that there was thus no legal basis on which to sue Volpicella.  <u>See</u> Def.'s Mem. at 16-18; Def.'s Mem. of Law in Supp. of Mot. for Summ. J. (Doc. No. 36-2) at 10-14.  At the summary judgment stage, Bristol Heights alleged that Volpicella had breached the terms of the settlement and was, therefore, amenable to suit.  <u>See</u> Pl.'s Opp'n to Def.'s Mot. for Summ. J. (Doc. No. 64) at 1.  As the court noted in its Summary Judgment Ruling, however, the alleged breach in no way affects the fact that Chicago Title had no <u>duty</u> to sue, which is a necessary predicate of Bristol Heights' negligence and breach of contract claims in the present litigation.  <u>See</u> Ruling Re: Def.'s Mot. for Summ. J. ("Summ. J. Ruling") (Doc. No. 76) at 11.

Because the court rested its Summary Judgment Ruling on preclusion alone, it did not engage substantially with the parties' arguments concerning the settlement.  The court likewise finds the clear preclusion of the present action sufficient for the imposition of Rule 11 sanctions and declines to address the myriad other reasons given by Chicago Title why Bristol Heights' suit here had no chance of success, including the argument that Chicago Title had no basis to sue Volpicella.

cover damage or loss to Bristol Heights based upon the tax payments.[4] In light of the state judgment as well as the Second Circuit Summary Order, any reasonable attorney would have known that this suit—which raises similar claims premised on the same underlying facts—was precluded and had no chance of success.  See Lighthouse Landings, Inc. v. Connecticut Light & Power Co., 300 Conn. 325, 353 (2011) ("A valid and final judgment in an action brought to declare rights or other legal relations of the parties is conclusive in a subsequent action between them as to the matters declared, and, in accordance with the rules of issue preclusion, as to any issues actually litigated by them and determined in the action." (citation, alteration, and internal quotation marks omitted)).

In her Opposition to Chicago Title's Motion for Sanctions, Attorney Zimmerman argues, inter alia,[5] that "whether res judicata applies involves technical issues" that are unclear here, see Pl.'s Opp'n at 4; that res judicata is only a basis for Rule 11 sanctions where the complaints and counsel in the two actions are identical, id.; and that the Complaint was filed in good faith, id. at 6.  None of these arguments have merit.

First, although technical issues of res judicata can arise, in this case it was Attorney Zimmerman who attempted to invent technical complexity, where none exists, in order to evade the clear preclusion of the present litigation by the prior state court

---

[4] Indeed, in light of his ruling on liability in the state trial, Judge Shaban found it unnecessary to address Volpicella's obligation to indemnify Chicago Title.  See Chicago Title Ins., 2011 WL 4031565, at *12.  Hence, as this court noted in its Summary Judgment Ruling, it would clearly contradict the state court judgment for this court now to impose liability on Chicago Title for failing to sue Volpicella, after Chicago Title joined Volpicella as a defendant in the state action, seeking indemnification from him in case of liability.  See Summ. J. Ruling at 12.

[5] Certain of Attorney Zimmerman's arguments no longer apply—in particular, her argument that a Rule 11 motion should not be used as a substitute for summary judgment and that further discovery may be necessary to answer claims made in the Rule 11 motion.  See Pl.'s Opp'n at 2-3.

judgment.[6]  More to the point, the Second Circuit Summary Order settled the issue of preclusion in no uncertain terms.  Nowhere does Attorney Zimmerman acknowledge that Order, let alone explain to this court how the Complaint that she filed in this case evades that Order's unambiguous, pointed language.  See Bristol Heights Assocs., LLC v. Chicago Title Ins. Co., No. 11-1115-CV (2d Cir. Dec. 27, 2011) ("[T]he Connecticut Superior Court's August 18, 2011 final judgment in the parallel state court precludes further proceedings in federal court based on the same factual assertions." (citations omitted) (emphasis added)).  Second, the proposition that the court may sanction frivolous actions barred by res judicata only where identical claims and counsel were involved in the two actions is without foundation in the case law, and such a test would plainly invite abuse of the sort that Rule 11 is meant to deter.  The test for Rule 11 sanctions is whether the filing was objectively unreasonable.  Star Mark Mgmt., 682 F.3d at 177.  To be sure, not all actions that a court ultimately holds to be barred by res judicata are unreasonable.  There may also be circumstances in which due diligence fails to uncover prior litigation, partly because of changes in representation.  Attorney Zimmerman, however, was well aware of the state court judgment and consulted with Bristol Heights' counsel from the prior litigation.  See Compl. at ¶ 6; Pl.'s Opp'n at 7.  Finally, Attorney Zimmerman's assertions of good faith do not mitigate the objective

---

[6] The Complaint in this case misleadingly describes Judge Shaban's ruling as holding that Chicago Title "did not have to reimburse Bristol Heights."  See Compl. at ¶ 6.  In opposing the Motion for Sanctions, and again in opposing the Motion for Summary Judgment, Attorney Zimmerman similarly claimed to the court that there was no inconsistency between one judgment releasing an insurer of its obligation to pay the insured "out-of-pocket" and another judgment imposing damages on the insurer for not suing a third party to recover money on the claim that the insurer was not obligated to cover out of its own pocket.  See Pl.'s Opp'n at 5; Pl's Opp'n to Def.'s Mot. for Summ. J. (Doc. No. 64) at 11.  The state court judgment nowhere used "reimburse" or "out-of-pocket" to limit the scope of liability at issue.  As the court already noted in its Summary Judgment Ruling, Bristol Heights' reading of the state court judgment is not only illogical; it requires the court to ignore what the ruling plainly says—that Chicago Title is "not liable for any loss or damage" due to the tax payments.  See Summ. J. Ruling at 12 (quoting Chicago Title Ins., 2011 WL 4031565, at *11) (emphasis added).

unreasonableness of the present Complaint, which was unsupported either by precedent or by nonfrivolous argument for extending or revising current law.[7]  See Bartel Dental Books Co., Inc. v. Schultz, 786 F.2d 486, 491 (2d Cir. 1986) ("Neither does the naked assertion of good faith make the claims less unreasonable.").

Therefore, the court determines that, in filing the Complaint, Attorney Zimmerman violated Rule 11(b)(2) and that a sanction is proper to deter future such violations.

### 2. Improper Purpose

Chicago Title also claims that Attorney Zimmerman brought this suit for an improper purpose in violation of Rule 11(b)(1).  See Def.'s Mem. at 34.  To support that claim, Chicago Title points to the fact that, rather than suing Volpicella, Bristol Heights sued Chicago Title for failing to sue him.  Id.  If Volpicella did, in fact, breach the terms of his settlement with Bristol Heights, Bristol Heights' logical recourse would have been to sue him itself.  However, as the court observed in its Summary Judgment Ruling, the decision not to sue Volpicella is plausibly explained by Volpicella's substantial membership interest in Bristol Heights.  See Summ. J. Ruling at 12 n.8.  Bristol Heights may prefer to risk no recovery to recovering directly from Volpicella.  Id.  Since that is its choice, and since there is insufficient evidence that Attorney Zimmerman otherwise filed

---

[7] As already mentioned, Bristol Heights never clearly identified a legal basis for the duty to sue underlying its breach of contract and negligence claims.  To evade the obvious preclusion of this second federal action, Bristol Heights made up a distinction nowhere found in the state court opinion between an insurer's out-of-pocket liability and its liability for damages for failing to sue third parties, then alleged—without any basis in law or in the text of the opinion—that the state court had left open the latter sort of liability.  As a second argument, Bristol Heights analogized its negligence claim to a legal malpractice claim against an attorney—again, without any basis in law.  See Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 27-28.  These arguments were not merely unavailing, see Summ. J. Ruling at 11, but so frivolous as to render this litigation baseless and Attorney Zimmerman subject to monetary sanction.

this action for an improper purpose, the court does not determine that the filing of the Complaint constituted a violation of Rule 11(b)(1).[8]

### 3. Sanction Amount

Rule 11 sanctions "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4); see also Caisse Nationale de Credit Agricole-CNCA, New York Branch v. Valcorp, Inc., 28 F.3d 259, 266 (2d Cir. 1994) ("[T]he principal objective of the imposition of Rule 11 sanctions is not compensation of the victimized party but rather the deterrence of baseless filings and the curbing of abuses."). "Such a sanction may, but need not, include payment of the other parties' expenses." Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 393 (1990). Having held a hearing on the Motion for Sanctions, the court determines that, given the nature of Attorney Zimmerman's violation, a sanction in the amount of $5,000 should suffice to deter future Rule 11 violations.

Chicago Title has also filed a separate Motion for Attorney's Fees, in which Chicago Title represents that counsel has spent 307.6 hours on this case since December 2012. At an hourly rate of $150, and with the additional $1,221.50 in documented litigation expenses, Chicago Title's Motion seeks—by the court's own calculation—$47,361.50 in total.

While the court is of the view that such a sanction would be unduly harsh under Rule 11(b)(2), the court has the discretion to direct payment of the penalty to Chicago Title to defray the expenses it incurred from defending this baseless Complaint.  See

---

[8] When objectively unreasonable claims are combined with multiple filings, district courts have occasionally inferred improper purpose.  See, e.g., On Time Aviation, Inc. v. Bombardier Capital Inc., 570 F. Supp. 2d 328, 332 (D. Conn. 2008), aff'd, 354 F. App'x 448 (2d Cir. 2009); McLoughlin v. Altman, No. 92 CIV. 8106(KMW), 1995 WL 640770 (S.D.N.Y. Oct. 31, 1995).  The court declines to do so in this case.

Fed. R. Civ. P. 11(c)(4). The court holds that an order directing Attorney Zimmerman to pay the Rule 11 sanction to Chicago Title is proper in light of the violation and the Motion for Sanctions brought by Chicago Title.

B. Section 1927/Inherent Authority[9]

Chicago Title additionally urges the court to sanction Attorney Zimmerman under section 1927 and, therefore, to require her personally to satisfy the reasonable costs of litigation, including attorney's fees. Section 1927 provides for imposing these costs on a lawyer who "multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. "Like an award made pursuant to the court's inherent power, an award under § 1927 is proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." Oliveri v. Thompson, 803 F.2d 1265, 1273 (2d Cir. 1986). Under either the court's inherent authority or section 1927, sanctions require "a particularized showing of bad faith." United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO, 948 F.2d 1338, 1345 (2d Cir. 1991); see also Salovaara v. Eckert, 222 F.3d 19, 35 (2d Cir. 2000); Enmon v. Prospect Capital Corp., 675 F.3d 138, 144 (2d Cir. 2012).

The court is unable to make the requisite determination that Attorney Zimmerman acted in bad faith in this case and, therefore, declines to sanction her pursuant to either

---

[9] Chicago Title's Motion for Sanctions does not expressly invoke the inherent authority of the court to sanction a party. However, Chicago Title's subsequent Motion for Attorney's Fees (Doc. No. 81) does invoke that authority alongside section 1927. The "only meaningful difference" between the court's inherent authority and section 1927 is whether the sanction can be imposed on the party, Bristol Heights, as well as Attorney Zimmerman. See Oliveri v. Thompson, 803 F.2d 1265, 1273 (2d Cir. 1986). Because Chicago Title moves for a sanction against counsel alone, and because the same standard is applicable in both contexts, the court addresses the two bases for sanctioning Attorney Zimmerman—section 1927 and the court's inherent authority—jointly.

section 1927 or the court's inherent authority. An inference of bad faith is warranted "only if actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay" or harassment. Salovaara, 222 F.3d at 35. While the litigation brought in this case was objectively unreasonable in light of the prior litigation, Attorney Zimmerman's conduct does not yet amount to "a pattern of litigation designed to evade previous rulings." Pentagen Technologies Int'l Ltd. v. United States, 172 F. Supp. 2d 464, 473 (S.D.N.Y. 2001), aff'd, 63 F. App'x 548 (2d Cir. 2003). There is no question that Attorney Zimmerman filed meritless claims and that a reasonable inquiry would have uncovered that these claims were meritless. Nevertheless, her conduct does not otherwise suggest intentional delay or harassment and is, in the court's view, more consistent with incompetence than bad faith.[10]

## III.   CONCLUSION

For the reasons stated above, defendant's Motion for Sanctions (Doc. No. 38) is **GRANTED in part and DENIED in part.** Having determined that the filing of the present Complaint violated Rule 11(b)(2), the court imposes on Attorney Zimmerman a monetary sanction in the amount of $5,000 to deter future such violations. Defendant's related Motion for Attorney's Fees (Doc. No. 81) is also **GRANTED in part**, up to the amount of the sanction imposed here.

---

[10] Chicago Title has apprised the court of a series of actions undertaken by Bruce R. Matzkin, Esq., who represented Bristol Heights during the state trial and who has played a role of some sort in this case, albeit a role that is still not entirely clear. Whether he acted here as "co-counsel" with Attorney Zimmerman, as in-house counsel, or as a principal or manager of Bristol Heights, his actions are not the proper subject of the Motion for Sanctions filed in the present litigation: Attorney Matzkin never filed an appearance or signed a pleading in this case.

The court hereby **ORDERS** Attorney Zimmerman to pay $5,000 directly to Chicago Title, as a sanction and in partial satisfaction of the costs incurred in defending the present litigation.  Payment must be made according to the following schedule to be deemed in compliance with the sanction imposed by this court.  Five monthly payments shall be made in the amount of $800 each, with the first payment due thirty days from the date of this Ruling.  A final payment of $1,000 shall be made within 180 days from the date of this Ruling.  Chicago Title is **ordered** to file a notice on this docket upon payment of the entire sanction.

**SO ORDERED.**

Dated at New Haven, Connecticut this 19th day of September, 2013.

                                                      Janet C. Hall
                                                     United States District Judge